(83 App. Div. 105.)

### QUEENS COUNTY WATER CO. v. MONROE et al.

(Supreme Court, Appellate Division, Second Department. May 28, 1903.)

1. TAXATION—ACTS FOR PROTECTION OF TAXPAYERS—LIBERAL CONSTRUCTION.
    Laws 1887, p. 885, c. 673, authorizing suits by taxpayers, as amended by Laws 1892, p. 620, c. 301, entitled "An act for the protection of taxpayers," is a remedial statute, and is to be liberally construed.

2. SAME—RIGHT TO ENFORCE TAX.
    The only warrant for the imposition of a tax or a burden on the citizen or his property without his consent must be found in some positive law, and it cannot be enforced unless imposed in the manner authorized by statute.

3. GREATER NEW YORK—WATER COMMISSIONER—POWERS—PURCHASING REAL ESTATE TO INCREASE WATER SUPPLY.
    The Greater New York Charter, Laws 1901, p. 208, c. 466, § 471, provides that it shall not be lawful for the city of New York, or for any department thereof, to make any contract touching the public water supply, save in accordance with the provisions and requirements of the act. Section 517 (Laws 1901, p. 231, c. 466) declares that all of the rights and powers of the city of Brooklyn, or of any of its departments or officers, respecting the waterworks of said city, are vested in the city of New York, and as matter of administration devolved upon the commissioner of wa-

ter supply, to be by him exercised in accordance with the provisions of the act. *Held*, that assuming that the water department of Brooklyn had the power, without the concurrence or approval of the common council, to purchase real estate for the purpose of increasing the water supply, this did not operate to devolve such unlimited power on the water commissioner of the city of New York.

4. SAME.

The Greater New York Charter, Laws 1901, p. 22, c. 466, § 42, provides that all the powers and duties which on December 31, 1897, were conferred on the common council of the city of Brooklyn, shall be exercised by the board of aldermen of the city of New York, etc. Laws 1888, p. 1045, c. 583, tit. 15, § 11 (the Brooklyn Charter), provided that the commissioner of city works, "by and with the consent of the common council," could from time to time purchase such additional land as might be necessary for the use of the waterworks of the city. *Held* that, even if the purchase of property to extend the water system of Brooklyn was not controlled by the general scheme provided in the Greater New York Charter, all the powers of the common council of Brooklyn, including its power to consent to the purchase of property for the extension of the system, were devolved on the board of aldermen of New York, and the commissioner of water supply of New York would have no authority to purchase property at private sale for such purpose without the approval of the board.

5. SAME.

The only authority for the purchase of property for the purpose of increasing the water supply of the city of New York, whether in the borough of Brooklyn or in the Bronx, must be found in the provisions of the Greater New York Charter dealing with this general subject, and not in the devolved powers; it being specially provided in section 471 of the charter (Laws 1901, p. 208, c. 466) that no contract in relation to the matter shall be made "save in accordance with the provisions and requirements of this act."

6. SAME—PROCEDURE.

The Greater New York Charter, in section 486 (Laws 1901, p. 217, c. 466), provides that whenever, in the opinion of the commissioner, it is necessary to acquire real estate for the purpose of increasing the water supply, he shall prepare a map of the real estate, and submit the same to the board of estimate and apportionment for approval; that a copy shall be filed in the office of the commissioner; that before their final adoption the board shall afford all persons interested an opportunity to be heard. Section 488 (page 218) provides that after final adoption the commissioner shall prepare six similar maps of the proposed site of any dam, etc., and other necessary appurtenances, for the proper completion of the work, etc. Section 489 (page 219) requires the corporation counsel to cause one of said maps to be filed in the office of the clerk of each county in which any of the real estate is located, etc. Section 507 (page 228) provides that the commissioner, "subject to the approval of the board of estimate and apportionment, may agree with the owners or persons interested in any real estate laid down on said maps as to the amount of compensation to be paid to such owners or persons interested for the taking or using and occupying such real estate," etc. *Held*, that the commissioner has no authority to purchase land generally, but only such real estate as has been determined to be necessary, and until the maps have been prepared and approved, with all the formalities provided by sections 486, 488, and 489, he has no authority to purchase real estate at all.

Bartlett and Hirschberg, JJ., dissenting.

Appeal from Special Term, Queens County.

Action brought by the Queens County Water Company against Robert Grier Monroe, as commissioner of water supply, gas, and electricity, and Edward Marshall Grout, as comptroller, to restrain

certain acts of the defendants as officials of the city of New York in acquiring land for the purpose of adding to the water supply of said city, on the ground that such acts were unlawful. From an order denying a motion for an injunction pendente lite, plaintiff appeals. Reversed.

The following is the opinion of the Court at Special Term (SMITH, J.):

"In my opinion, the power of the city of Brooklyn to purchase land at private sale for the purpose of extending its water supply, which existed at the time of consolidation, was intended to be preserved by section 517 of the charter (Laws 1901, p. 231, c. 466), and that the provisions of the charter for notice and hearing before the final adoption of the map of the land proposed to be acquired apply, as far as land to be acquired for the extension of the Brooklyn water system is concerned, only when land is to be acquired by condemnation proceedings.

"Motion denied."

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Henry de Forest Baldwin, for appellant.
James McKeon (R. Percy Chittenden, on the brief), for respondents.

WOODWARD, J.  The plaintiff brings itself within the provisions of section 1925 of the Code of Civil Procedure, and of chapter 673, p. 885, of the Laws of 1887, as amended by chapter 301, p. 620, of the Laws of 1892, entitled "An act for the protection of taxpayers"; and, while it urges a special interest aside from its status as a taxpayer, we do not find it necessary to consider the equitable merits of its case at this time. Chapter 673, p. 885, of the Laws of 1887, as amended by chapter 301, p. 620, of the Laws of 1892, is a remedial statute, and is to be liberally construed for the purpose of "the protection of taxpayers." Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 492, 499, 66 N. E. 395; Latham v. Richards, 15 Hun, 129, 133, and authorities there cited; Adamson v. Union R. R. Co., 74 Hun, 3, 9, 26 N. Y. Supp. 136; Matter of Town of Eastchester, 53 Hun, 181, 184, 6 N. Y. Supp. 120; Armstrong v. Grant, 56 Hun, 226, 228, 9 N. Y. Supp. 388; Ayers v. Lawrence, 59 N. Y. 192, 196, and authorities there cited; Osterhoudt v. Rigney, 98 N. Y. 222, 231; Gorden v. Strong, 158 N. Y. 407, 53 N. E. 33.  These acts for the protection of taxpayers give a new right of action.  It was the settled law of this state, prior to the adoption of chapter 161, p. 467, of the Laws of 1872 (the predecessor of the present statute), that a taxpayer, in his character as such, whose position was not different from that of the whole body of taxpayers, had no such interest as entitled him to resort to a court of equity to revise, restrain, or set aside the action of town or municipal authorities, upon an allegation that their acts were unauthorized and illegal, or that unless arrested they would subject the plaintiff to unjust or illegal taxation.  Osterhoudt v. Rigney, 98 N. Y. 229, and authorities there cited.  The relegation of the taxpayer, under this doctrine, exclusively to legal remedies for relief, amounted in many cases to its practical denial, and it was the purpose of the Legislature to place the taxpayer in a position where he could, before the intervention of vested rights and the equities of third parties,

challenge the legality of the acts of public officials upon the same grounds which he might interpose in a legal action to protect his property against alienation under an illegal assessment or other act of the public authorities by whi.h he was to be divested of his property. Ayers v. Lawrence, supra; Osterhoudt v. Rigney, supra. Taking this view of the law, Finch, J., in the case of Warrin v. Baldwin, 105 N. Y. 534, 537, 12 N. E. 49, says:

"The act of 1881 [page 709, c. 531] expressly authorizes a taxpayer to maintain an action for the prevention and restraint of 'any illegal official act' on the part of the officers of any county, town, or municipal corporation; and if the intended and threatened act of the defendant, as county treasurer, is illegal, the plaintiff is entitled to sue, and to prevent the meditated violation of law, irrespective of the consequences of such violation. The statute assumes that any illegal official act is or may be injurious to the corporation when done by its servant, and allows him to be restrained simply because of the illegality."

See, also, Osterhoudt v. Rigney, 98 N. Y. 231.

And in the case of Zeigler v. Chapin, 126 N. Y. 342, 347, 27 N. E. 471, the same learned jurist says:

"The suit is brought by a taxpayer of the city of Brooklyn to prevent such purchase as being illegal and unauthorized, and amounting to a waste of the property and funds of the city, and it was a proper and reasonable exercise of discretion on the part of the court to restrain the purchase pending the litigation in aid of the plaintiff's remedy, unless we are able to see, on an examination of the complaint, that he is clearly and certainly not entitled to the ultimate relief which he seeks."

See Gerlach v. Brandreth, 34 App. Div. 197, 199, 54 N. Y. Supp. 479; Bush v. O'Brien, 164 N. Y. 205, 215, 58 N. E. 106.

The theory of the law is that the taxpayer, as the ultimate bearer of the burdens of the municipality (Ayers v. Lawrence, supra; Osterhoudt v. Rigney, supra), shall have a remedy against the illegal official acts which tend to waste the property of the public, and to impose unjust burdens upon the taxpayer (Gorden v. Strong, 158 N. Y. 408, 53 N. E. 33; Bush v. O'Brien, supra; Wenk v. City of New York, 171 N. Y. 607, 614, 615, 64 N. E. 509, and authorities cited; Talcott v. City of Buffalo, 125 N. Y. 280, 288, 26 N. E. 263); and where the act is illegal the law presumes that injury may result to the corporation, and through the corporation to the individuals who must pay the taxes for the support of the municipality (Warrin v. Baldwin, supra; Ayers v. Lawrence, supra).

Having in mind that the law is designed for the protection of taxpayers, it should be remembered that the only warrant for the imposition of a tax or a burden upon the citizen or his property, without his consent, must be found in some positive law, and that it cannot be enforced unless imposed in the manner pointed out by the statute (Sanders v. Downs, 141 N. Y. 422, 424, 36 N. E. 391; Schneider v. City of Rochester, 160 N. Y. 165, 172, 54 N. E. 721, and authorities there cited); so that the plaintiff upon this appeal has a right to urge any illegality or omissions in the official acts of the defendants which it might urge in defense of its property in an action for ejectment under a tax title, for the technical, but sound, reason that the provisions of the statute intended for his protection have not been observed (Moore v. Mayor, 73 N. Y. 238, 29 Am. Rep. 134; Matter of Smith,

52 N. Y. 526; Matter of Pennie, 108 N. Y. 364, 373, 15 N. E. 611, and authorities there cited; In re Douglass, 46 N. Y. 42). In the latter case it is said (page 44):

"Municipal, like private, corporations, must act within the limitations prescribed by the sovereign power, and they cannot impose a charge upon the person or property of individuals unless they proceed in the manner prescribed by law."

In the case at bar the defendant, the commissioner of water supply, is seeking to purchase certain property for the city of New York, which will impose a burden of taxation upon this plaintiff. He is taking steps which are preliminary to the levying of a tax upon the property of the plaintiff, in common with other taxpayers of the city of New York, and which will, if not prevented, compel the plaintiff to part with its money or property; and the question here presented is whether the defendants have taken the necessary steps provided by law to thus impose this burden.

The authority of a municipal corporation to take private property must be expressly conferred, and the power and manner of its exercise strictly pursued. Schneider v. City of Rochester, supra. It is not material whether the property of the individual is taken in the form of taxes or real estate, for in either case they must be taken for public purposes, and can be based only upon the theory that the person contributing taxes or other property is receiving a just compensation for the same. "The power to levy assessments exists only where it is distinctly conferred by legislative authority," say the court in Stebbins v. Kay, 123 N. Y. 31, 35, 25 N. E. 207. "Where the mode is prescribed in which the power is to be exercised, it must be followed. The mode in such cases constitutes an essential element in the proceeding. Especially where one claims to hold another's property under a sale for taxes must one show that every provision designed for the security of the taxpayer has been substantially complied with. Every such provision is mandatory. It is not for the courts to say that the same protection may be obtained by other means. 'That which the Legislature has directed courts cannot declare immaterial.' Merritt v. Village of Portchester, 71 N. Y. 309 [27 Am. Rep. 47]. No presumption will take the place of the act required." See May v. Traphagen, 139 N. Y. 478, 481, 34 N. E. 1064.

In Sharp v. Speir, 4 Hill, 76, 86, a leading case upon the question here under consideration, the court say:

"Every statute authority, in derogation of the common law, to divest the title of one and transfer it to another, must be strictly pursued, or the title will not pass. This is a mere naked power in the corporation, and its due execution is not to be made out by intendment; it must be proved. It is not a case for presuming that public officers have done their duty, but what they have in fact done must be shown."

So, in the case of Deputron v. Young, 134 U. S. 241, 256, 10 Sup. Ct. 539, 545, 33 L. Ed. 923, it is said that:

"The rule is well settled that 'in the case of a naked power, not coupled with an interest, the law requires that every prerequisite to the exercise of that power should precede it.'"

In Burke v. Burke, 170 Mass. 499, 500, 49 N. E. 753, 754, the court say:

"When one seeks to show that the title of another has passed to himself by virtue of statutory proceedings, he cannot prevail without proving that everything has been done which the statute calls for as a condition precedent to the transfer of the property."

The right to levy a tax upon the property of the plaintiff, in common with other taxpayers, for the purchase of real estate or water rights, is conditioned upon the performance of the prerequisites prescribed by the laws of this state. It is a mere naked power, depending wholly upon statutory authority, and the creation of specific means excludes others. Wells v. Town of Salina, 119 N. Y. 280, 296, 23 N. E. 870, 7 L. R. A. 759; People v. Briggs, 50 N. Y. 553, 559; The Mayor v. Ray, 19 Wall. 468, 475, 22 L. Ed. 164. If, therefore, "an act for the protection of taxpayers" is to accomplish its purpose and protect taxpayers, the courts must intervene whenever it is made to appear, in a proper action, that the person or officer assuming to act in behalf of a municipal corporation is involving the corporation in an indebtedness to be met by taxation, or by the use of the public funds, in a manner not authorized by the law. The rule, as we have already pointed out, is well settled that the "authority of a municipal corporation to take private property must be expressly conferred, and the power and manner of its exercise strictly pursued." Schneider v. City of Rochester, page 172, 160 N. Y., page 722, 54 N. E., and authorities there cited. As has been so well said in Guest v. The City of Brooklyn, 69 N. Y. 506, 517:

"We should regard a departure by the courts from rules of law wisely established for the protection of all, to meet the equities of a particular case or class of cases, as a far greater evil than that sought to be remedied. Courts can confine the Legislature within constitutional authority, and when the questions are legitimately up can and do exact a strict compliance with all the requirements of law leading to a forcible taking of the property of the citizen, but beyond this they have no discretion, and are themselves bound to observe and enforce legislative provisions, whether they approve them or not."

Karst v. Gane, 136 N. Y. 316, 321, 32 N. E. 1073, 1074. In the last-cited case it is said that:

"In recent times courts are less disposed than formerly to depart from or qualify the plain words of a statute in favor of what is termed an equitable construction, in order to take particular cases out of its operation upon some supposed view of policy not indicated in the act itself."

Having thus called attention to the rules of law governing the conduct of municipal corporations and those acting or pretending to act in their behalf, let us consider the facts in this case. The plaintiff owns a waterworks plant near Valley Stream, in the county of Nassau, and supplies the Fifth Ward of the borough of Queens, in the city of New York, and a number of villages in the county of Nassau. The watershed from which the plaintiff secures its water supply is located between the two watersheds which supply, respectively, the city's Valley Stream reservoir and Hempstead reservoir. The city proposes to build what is known as a filtering gallery directly across the watershed of the plaintiff, and thus, it is alleged, intercept substantially all of the water which falls upon said watershed; but we are not concerned with this view of the question at this time. It appears that the commissioner of water supply, gas, and electricity of the city of

New York prepared a map showing certain parcels of land on the plaintiff's watershed, and that the board of estimate approved said map, and authorized the commissioner to purchase the land shown thereon, at private sale, for the purpose of increasing the water supply of the city of New York. The resolution of the board of estimate purports to be adopted pursuant to section 507 of the Greater New York Charter (chapter 466, p. 228, Laws 1901), and it is not questioned that the map therein referred to had not, prior to its adoption, been open to public inspection, and that the board had not afforded persons interested a full opportunity to be heard respecting the map and the acquisition of the real estate shown thereon, and had not given public notice of a hearing respecting the same, as required by section 486 of the charter. The question presented on this appeal is whether the commissioner of water supply, with the approval of the board of estimate and apportionment, has the right to purchase at private sale real estate for the purpose of increasing the water supply of the city, without giving public notice, and an opportunity to persons interested to be heard before such purchase, and before the final adoption of the map showing the land proposed to be purchased. The learned court at Special Term held that section 517 of the charter preserved to the commissioner of water supply of the city of New York the power to purchase land for water supply purposes, and that the provisions of the charter for notice and hearing before the final adoption of the map of the land proposed to be acquired applied, so far as land to be acquired for the extension of the Brooklyn water system was concerned, only when such land was to be acquired by condemnation proceedings. It was also held that while the charter of the city of Brooklyn required the concurrence of the common council before the commissioner of city works could purchase land for Brooklyn's water supply, and while section 42 of the Greater New York Charter devolved upon the board of aldermen all the powers and duties which, at the time of consolidation, were conferred upon the common council of Brooklyn, except as otherwise provided in the charter, section 507 of the charter devolved that particular function of the common council upon the board of estimate and apportionment. Holding this view, the learned court denied the plaintiff's motion for a writ of injunction pendente lite, and from that order the latter appeals to this court.

If the Legislature intended this result, it has carefully veiled that intention. All of title 2 of the Greater New York Charter, covering sections 468–531, pp. 206–238, both inclusive, is devoted to the department of water supply, gas, and electricity, which department is to be under the control of a commissioner, and a complete scheme for the maintenance of the old water plants and the construction of new or additional plants, and the purchases incident thereto, is provided. Section 469 gives the commissioner general jurisdiction of the structures, property, etc., and of the maintenance of an adequate supply of water. Section 472 provides that the commissioner, with the approval of the board of estimate and apportionment, shall have power, within and throughout the state of New York, to select and to determine all sources of water supply that may be needed for the supply of the pub-

lic waterworks of said city; that any sources of water so selected and determined by him shall be deemed necessary for the public use of the city; and thereupon, with the approval of the board of estimate and apportionment, together with the authority of the board of aldermen, expressed by its resolution or ordinance, it shall be lawful for the city of New York to acquire by condemnation any real estate or any interest therein that may be necessary in order to acquire the sole and exclusive property in such source or sources of water supply, and to wholly extinguish the water rights of any other person or corporation therein, with the right to lay, relay, repair, and maintain aqueducts, etc., and if necessary to acquire by condemnation lands for such purpose in any county or counties through which it may be necessary to pass in conducting such waters, not to any particular borough, but to the city of New York. This section details further matters in this connection not necessary to be set out here, and section 471 provides that it shall not be lawful for the commissioner of water supply to "enter into any contract whatever with any person or corporation engaged in the business of supplying or selling water for private or public use and consumption," without the consent of the board of estimate and apportionment, and the written consent and approval of the mayor and the comptroller of the city. It is further provided that "it shall not be lawful for the said city of New York or for any department thereof, to make any contract touching or concerning the public water supply, and especially the increase thereof, with any person or corporation whatsoever, save in accordance with the provisions and requirements of this act, which said provisions and requirements are hereby declared to establish the exclusive rule for the making of such contracts."

With this language in mind, how can it be said that section 517 could give the commissioner of water supply any power to make a contract for the purchase of land for the extension of the water supply system of the borough of Brooklyn, except under the restrictions imposed by title 2 of the charter? Section 517 provides:

"For all the purposes of this act all of the rights, pow. , privileges, duties and obligations, heretofore created by law or otherwise, of the city of Brooklyn, or of any of its departments or officers respecting the waterworks of said city are, so far as they are consistent with the provisions of this act, hereby vested in the city of New York, as constituted by this act, and as matter of administration devolved upon the commissioner of water supply, gas and electricity of the city of New York to be by him exercised in accordance with the provisions, directions and limitations of this act."

Assuming that the water department of the city of Brooklyn had the power, without the concurrence or approval of the common council, to purchase real estate for the purpose of increasing the water supply, does this operate to devolve such unlimited power upon the water commissioner of the city of New York? We think not. The rights, powers, privileges, duties, and obligations, "so far as they are consistent with the provisions of this act," are vested, not in the commissioner, but in the "city of New York, as constituted by this act, and as matter of administration devolved upon the commissioner," to be by him exercised in accordance, not with the previous conduct of the water department of the city of Brooklyn, but "with the provisions,

directions and limitations of this act," which unquestionably refers to the provisions of section 471, in common with all other sections of the charter in reference to the water supply. But section 11, tit. 15, c. 583, p. 1045, Laws 1888, shows that the power of the commissioner of city works was not absolute. He was authorized, "by and with the consent of the common council," from time to time, "to purchase such additional land, and under existing provisions of law extinguish such additional water rights as may be necessary for the use, protection or extension of the waterworks of the city of Brooklyn." It appears, therefore, that the only powers of the water department of the city of Brooklyn to devolve upon the city of New York, to be administered by the commissioner of water supply (conceding that all of such powers devolved without other limitations), was a power to purchase property at private sale with the approval of the common council. By the provisions of section 42 of the charter "all the powers and duties which on December thirty-first, eighteen hundred and ninety-seven, were conferred or charged upon * * * the common council of the city of Brooklyn or of Long Island City, or upon any board, body or officer of any of the municipal and public corporations or parts thereof, consolidated with the city of New York, as heretofore known and bounded, and all the powers and duties which on January first, nineteen hundred and two, are conferred or charged upon the municipal assembly of the city of New York shall be exercised and performed by the board of aldermen of the city of New York, as hereby constituted, subject, nevertheless, to the power of approval or disapproval by the mayor of said city, as provided in this act." All of the powers and duties of the common council of the city of Brooklyn, including the power to consent to the purchase of property for extending the water system, if this is not governed by the general scheme provided in the charter, must have devolved upon the board of aldermen of the city of New York, so that, if the source of power be the original powers of the commissioner of city works, the commissioner of water supply can have only the power to purchase private property at private sale, subject to the approval of the board of aldermen, and it is not suggested that the acts of the commissioner here complained of have such sanction.

It seems to us entirely obvious, however, that the only authority for the purchase of property in connection with the increase of the water supply of the city of New York, whether it be in the borough of Brooklyn or in the Bronx, must be found in the provisions of the charter dealing with this general subject, and not in the devolved powers; for it is specially provided by section 471 that no contract in relation to the matter shall be made "save in accordance with the provisions and requirements of this act." Have these provisions and requirements been complied with? Section 484 authorizes the commissioner, "for and in behalf, and in the name of the city of New York, in the manner hereinafter prescribed, to acquire all rights, titles and interests in and to such real estate, by whomsoever the same may be held, enjoyed or claimed, and to pay for and extinguish all claims or damages on account of such rights, titles or interests, or growing out of such taking or using." This does not say how

he shall acquire the property; it merely authorizes him to acquire it in the manner hereinafter prescribed, whether by condemnation or by private purchase. Section 485 defines "real estate" as used in this chapter, and makes it include all rights in lands and waters appurtenant thereto. Section 486 provides that whenever, in the opinion of said commissioner, it is necessary to acquire any such real estate for any of the purposes hereinbefore set forth, or for the purpose of extinguishing any right, title, or interest thereto or therein, the said commissioner, for and on behalf of the city of New York, shall prepare a map or maps of the real estate which in his opinion is necessary to acquire for the purposes hereinbefore set forth, and shall submit the same to the board of estimate and apportionment for approval. It should be borne in mind that it is made the duty of the commissioner to prepare this map whenever in his opinion it "is necessary to acquire any such real estate"; that is the test—the necessity for the acquirement of such real estate, and not the method of its acquirement. The section further provides that the board may modify the map or maps or reject them, and that a "copy of the map or maps so prepared, with a certificate of the adoption thereof, signed by the commissioner and the mayor, shall be filed in the office of said commissioner and be open to public inspection, and shall be the map or maps of the real estate to be acquired, subject to such changes or modifications as the said commissioner may from time to time deem necessary for the more efficient carrying out of the provisions of this act. And the said board of estimate and apportionment, prior to the final adoption of such map or maps, shall afford to all persons interested a full opportunity to be heard respecting such map or maps and the acquisition of the real estate shown thereon, and shall give public notice of such hearing, by publishing a notice, once in each week, for three successive weeks in the City Record, and the corporation newspapers, and in two papers published in the county or counties in which the real estate to be acquired or effected is situated, and in two daily papers in the city of New York." Section 487 authorizes the commissioner, his agents and servants, to enter upon such real estate for the purpose of making surveys, etc.; and section 488 provides that after the final adoption of said map or maps the said commissioner shall prepare six similar maps or plans of the proposed site of any dam, reservoir, aqueduct, sluice, culvert, canal, pumping works, bridges, tunnels, blow-offs, ventilating shafts, and other necessary appurtenances for the proper completion of the work so proposed by him. It is provided that these maps shall indicate what portions are to be taken in fee, and what are to be taken only in part, and that the maps when adopted by the commissioner and board of estimate and apportionment shall be by said commissioner transmitted to the corporation counsel, with a certificate of approval written thereon and signed by the said commissioner and the mayor. By section 489 it is made the duty of the corporation counsel to cause one of said maps to be filed in the office of the clerk of each county in which any real estate laid out on said maps shall be located, except that in any county in which there may be a register's office the said map shall be filed therein.

Sections 490 to 506, inclusive, provide the details for giving notice of intention of applying for commissioners of appraisal, and the various matters incident to the taking of private property under the power of eminent domain, and section 507 provides as follows: "The said commissioner of water supply, gas and electricity, subject to the approval of the board of estimate and apportionment, may agree with the owners or persons interested in any real estate laid down on said maps as to the amount of compensation to be paid to such owners or persons interested for the taking or using and occupying such real estate," etc.

Can there be any reasonable doubt that the Legislature intended, in using the words, "any real estate laid down on said maps," to confine the powers of the commissioner and board of estimate and apportionment to the maps provided for in the sections cited? The rule is elementary that effect must be given to the whole of the language used, if it be plain, and do not lead to anything manifestly so unjust or absurd that it cannot be assumed the Legislature really intended such result. Mayor v. M. R. Co., 143 N. Y. 1, 21, 37 N. E. 494; People v. Angle, 109 N. Y. 564, 575, 17 N. E. 413, 418. In the latter case it was said:

"It is a primary rule of construction that statutes must be so interpreted as to give effect to every part thereof, and leave each part some office to perform; and any construction which deprives any part of a statute of effect and meaning, when it is susceptible of another interpretation, is wholly without support from any authority."

In the statute as we construe it, there is no difficulty in giving effect to every clause and word. It provides, first, a scheme for determining what lands or real estate as defined in the statute are necessary for the uses of the city for a water supply; second, it provides for describing and fixing the boundaries of such real estate, and giving public notice of an intention to take the same for the city. This is intended to allow the public, or those interested, to appear before the commissioner and the board of estimate and apportionment, and to present for their consideration such matters as may be pertinent to the question, whether on the score of public economy or private convenience. Then there are the provisions for taking the property under the power of eminent domain, a necessary power to prevent extortionate and unconscionable demands on the part of property owners within the lines marked out for acquisition, and this is followed by a provision that the commissioner, with the approval of the board of estimate and apportionment, may agree with the owners or persons interested in "any real estate laid down on such maps as to the amount of compensation," etc. He has no power to purchase land generally; it is only such real estate as has been determined to be necessary for the city to acquire, and until the map or maps have been prepared and approved, with all of the formalities provided by sections 486, 488, 489, the commissioner has no jurisdiction to make any purchases of real estate whatever; and because it is conceded that the commissioner and board of estimate and apportionment have not complied with these provisions, and that the notice and opportunity to be heard have not been afforded, the plaintiff in this action,

being a taxpayer within the provisions of the statute, has a right to be protected against the imposition of any burden for the payment of the contract price of the property proposed to be purchased at private sale. It had a right to this protection, as we have already pointed out, because the statute presumes that injury or waste may result from any illegal action on the part of corporation servants, and for the technical but sound reason that the provisions of the statute enacted for the protection of taxpayers against abuses on the part of public servants have not been complied with. Moore v. Mayor, 73 N. Y. 238, 250, 29 Am. Rep. 134; Matter of Pennie, 108 N. Y. 364, 373, 15 N. E. 611. The order appealed from should be reversed, and the injunction should be granted.

Order reversed, and motion for injunction granted, with costs to abide the final award of costs.

GOODRICH, P. J., and HOOKER, J., concur. BARTLETT and HIRSCHBERG, JJ., dissent on the grounds briefly stated in the opinion of SMITH, J., at Special Term.