GUENTHER et al. v. PATCH et al.

(Supreme Court, Equity Term, Erie County.  March, 1912.)

1. MUNICIPAL CORPORATIONS (§ 1000*)—TAXPAYERS' ACTION—INJURY.

The plaintiffs in a taxpayers' action under General Municipal Law (Consol. Laws 1909, c. 24) § 51, to restrain an alleged illegal act, need not show an injury to themselves; it being presumed that an illegal act will result in injury to the corporation, and through the corporation to the taxpayers in general.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2167–2172, 2198;  Dec. Dig. § 1000.*]

2. RAILROADS (§ 99*)—ELIMINATION OF GRADE CROSSING.

The enumeration in the Grade Crossing Act (Laws 1888, c. 345) § 2a, as added by Laws 1906, c. 144, of certain street crossings in the city of Buffalo which the commissioners may eliminate, limits their authority to the crosssings mentioned and to such other crossings as shall necessarily be affected by the plan adopted; and the mention of a grade crossing at Niagara street did not authorize them to eliminate a crossing at Dearborn street where there was no necessary, and not merely convenient, connection between the elimination of the two.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304;  Dec. Dig. § 99.*]

Action by Henry M. Guenther and another against Maurice B. Patch and others.  Injunction granted.

This is a taxpayers' action to restrain defendants from closing a part of Dearborn street in connection with the elimination of the grade crossing at Niagara street in the city of Buffalo.

J. H. Madden, of Buffalo (P. A. Laing, of counsel), for plaintiffs.

Spencer Clinton, of Buffalo, for defendants Grade Crossing Com'rs. A. Moot, of Buffalo, for defendant International Bridge Co.

Clark H. Hammond, Corp. Counsel, of Buffalo, for defendant City of Buffalo.

POUND, J.  [1]  This is a taxpayers' action to restrain "an alleged illegal (i. e., unauthorized) act."  General Municipal Law, § 51.  It is not necessary for plaintiffs to show an injury to themselves to maintain their action, and it does not appear that they have suffered any injury peculiar to themselves.  Bush v. O'Brien, 164 N. Y. 205, 58 N. E. 106;  Gerlach v. Brandreth, 34 App. Div. 197, 54 N. Y. Supp. 479. The law presumes that, where the act is illegal, injury may result to the corporation, and through the corporation to the taxpayers in general, and it is in the right and for the benefit of the city of Buffalo that plaintiffs sue.  Warrin v. Baldwin, 105 N. Y. 534, 12 N. E. 49; Queens Co. Water Co. v. Monroe, 83 App. Div. 105, 82 N. Y. Supp. 610.  The original Grade Crossing Act (L. 1888, c. 345) is entitled:

"An act to provide for the relief of the City of Buffalo and to change and regulate the crossing and occupation of the streets, avenues and public grounds in said city by railroad."

Section 1 of said act, as amended, and section 2a as added by L. 1906, c. 144, read as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"1. Edward H. Butler, John B. Weber, Henry D. Kirkover, Augustus F. Scheu, James Ryan, Charles F. Bishop, William P. Northrup, Andrew Langdon, John Esser and Henry Schaefer of the county of Erie, are hereby appointed commissioners, any six of whom are authorized to enter into contracts from time to time on behalf of the city of Buffalo with any railroad company or companies or any terminal company organized for that purpose, or any bridge or other corporation owning or operating a steam railroad wholly or in part in said city, *for the relief of the city from the obstruction of the streets of the city of Buffalo by railroads crossing the same at grade* upon plans adopted or to be adopted by said commissioners as hereinafter provided. All agreements so made shall be binding upon the city.

"2a. The said commissioners are hereby authorized to contract on behalf of the city of Buffalo with the railroad companies interested to eliminate all crossings at grade of the streets of the city by railroad companies on Broadway, Bailey avenue, Sycamore street, Walden avenue, Genesee street, Furgeron street, Urban street, French street, Box avenue, East Ferry street, Northland avenue, Fillmore avenue, East Delevan avenue, Kensington avenue, Dewey avenue, Leroy avenue, Jewett avenue, Main street, Amherst street, Parkside avenue, Colvin street (Niagara Falls boulevard), Delaware avenue, Elmwood avenue, Military road, Hertel avenue, Elk street at the market, *Niagara street at International Bridge.* Amherst and Austin streets where the New York Central and Hudson River, Erie, Delaware, Lackawanna and Western and Grand Trunk Railroads cross. The contracts so made shall be binding upon the city."

Further provision is made in the act for the adoption of plans for the elimination of such grade crossings.

Pursuant to the authority conferred upon the commissioners to eliminate the grade crossing at Niagara street at International Bridge, a plan was adopted and filed in the Erie county clerk's office July 17, 1907, and a contract was entered into between the commissioners and the International Bridge Company, dated January 31, 1908, which plan and contract provided for the elevation of the company's tracks at Niagara street and the construction of a subway carrying Niagara street under the tracks, the opening of a new street 66 feet wide from Niagara street to Dearborn street, and the closing of Dearborn street from the south line of Parish street from a point 250 feet southerly therefrom. The contract was carried out, and the subway constructed in accordance with the detail plans, the railroad tracks were raised, the new street was opened, and fences constructed across Dearborn street as planned. The total cost of the work of constructing the subway, opening the new street, and the payment of damages to the properties injured by the change in the grade of Niagara street was $195,886.41 or upwards. Dearborn street parallels Niagara street, and lies 180 feet easterly therefrom. It is a main traveled thoroughfare, connecting the Black Rock section of Buffalo with the downtown section. Prior to this work two tracks crossed Niagara street and 16 tracks crossed Dearborn street. The Dearborn street grade crossing is an important one, and its elimination has been from time to time considered, but no express provision has been made therefor. Prior to the adopting of the plan proposed by the commissioners which preceded the execution of the contract with the International Bridge Company referred to above, advertisements were made and public hearings had before the commissioners setting forth the plan proposed for the subway in Niagara street, for the new street connecting Dearborn and

Niagara streets, and for the closing of Dearborn street southerly from Parish. At the hearing before commissioners interested parties were heard and various expressions of opinion were presented for and against the proposed plan, which was after the hearings adopted by the commissioners.

Section 12 of chapter 345 of the Laws of 1880, as amended by chapter 255, § 9, of the Laws of 1890, provides, in part, as follows:

"Sec. 12. If the commissioners shall decide that it is necessary for the purpose of carrying out any plan or modification or alteration of a plan adopted by them that any street shall be closed or discontinued or that the grade of any street or portion of any street or public ground shall be changed and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation, * * * the commissioners, by their chairman, may apply to a Special Term of the Supreme Court for the appointment of three commissioners to ascertain the compensation to be paid," etc.

The question is whether, under the authority conferred upon it to eliminate by contract the grade crossing on Niagara street at International Bridge, the commission had power to close that part of Dearborn street crossed by railroad tracks leading to the bridge from the south line of Parish street to a point 250 feet southerly therefrom. The plaintiffs urge that no such authority is conferred upon the commission, and the effect of its action is illegally to exclude the public from that portion of Dearborn street and turn it over to the Bridge Company for its private use, without compensation to the city. The defendants the grade crossing commissioners must point to some positive provision of law giving them authority to do the act in question, and show that they have proceeded in the manner prescribed by law.

The power of the commission is to enter into contracts on behalf of the city of Buffalo "for the relief of the city from the obstruction of the streets of the city of Buffalo by railroads crossing the same at grade." The purpose of the act is to relieve the streets from obstruction by railroads which cross the streets on grade, not to relieve the railroads from obstruction by the streets which cross the railroads on grade. In the execution of a plan adopted by the commission, provision is made for the closing of a street (section 12, supra), but no provision is made for the closing of a portion of a street, although provision is made in the same section for change of grade of a portion of a street. Dearborn street has not been closed by any judicial proceeding or by any legislative act.

[2] It is claimed that the elimination of the grade crossing at Dearborn street is merely incidental to the elimination of the grade crossing at Niagara street, a part of the plan therefor, and therefore within the powers of the commission. As above suggested, no express provision is made in the act for the elimination of the grade crossing at Dearborn street. There is no necessary connection between the elimination of the grade crossing at Niagara street and the grade crossing at Dearborn street. Dearborn street may now be reopened without interference with the Niagara street crossing. The enumeration of certain street crossings in the act limits the authority of the commission to such crossings, or to such other crossings as are necessarily affect-

ed by the plan adopted therefor, not merely conveniently related thereto. The administrative act of the commission in eliminating the grade crossing at Dearborn street by eliminating that portion of the street itself results, not only in safeguarding the public from a dangerous crossing, but, more directly, it seems, in turning so much of the street over to the Bridge Company, so that its operations will not be interfered with by the public use of the street. Taken as a part of the general scheme of eliminating grade crossings, it may be that the Legislature has power to vest authority in the grade crossing commission to do this where there is no taking of private property without compensation, notwithstanding the provision of the New York Constitution, art. 8, § 10, providing that no city shall give any property to a corporation. None of plaintiffs' property has been so taken and they have no complaint to make on that ground, but the commission must act within the limitations prescribed by the Legislature, and such limitations do not extend its power to the Dearborn street crossing.

The rules for the construction of statutory powers of municipal boards have been well stated as follows:

"A municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily and fairly implied in or incidental to the powers expressly granted; third, those indispensable (not simply convenient, but essential) to the declared objects and purposes of the corporation." Dillon on Municipal Corporations, § 89.

"The courts adopt a strict, rather than liberal, construction of the foregoing powers. Action of municipal corporations within the limits prescribed by statute will be favored, and not defeated or impaired by harsh construction, but such action is to be held strictly within limits, and any ambiguity or doubt as to the extent of the grant of power will be resolved in favor of the public." Dillon on Municipal Corporations, § 91.

Laws 1911, c. 358, § 15, reads as follows:

"Sec. 15. All of the official acts of the grade crossing commissioners of the city of Buffalo or a majority of them, in making and executing any contracts with any railroad company for the purpose of carrying out any plan or plans of said commissioners and all contracts entered into by said commissioners with any railroad are hereby affirmed and ratified, and shall be held to be in full force and validity, and all the acts of said commissioners or a majority of them, in making and executing any such contracts shall be adjudged to have been legally made and executed in any and all proceedings or contracts relating thereto or founded thereon, *but nothing in this section shall affect any action or proceeding pending in any court when this act takes effect.*"

This action was pending when the act took effect, so it is to be determined as if the act had not been adopted.

Plaintiffs are entitled to judgment restraining defendants from maintaining the fences at Dearborn street and requiring them to restore the street to public use.

Decision accordingly.