(155 App. Div. 27.)

GUENTHER et al. v. PATCH et al.

(Supreme Court, Appellate Division, Fourth Department. January 24, 1913.)

1. PARTIES (§ 60*)—DEFECTS—AMENDMENT—TIME.

    Where grade crossing commissioners contracted with a railroad company to eliminate a grade crossing and close a street, and the contract was confirmed by the Legislature except as to any action then pending, the court erred in permitting plaintiffs, who were suing individually to open the street, to thereafter amend, after time to do so had expired, so as to convert it into a taxpayer's action, thus making all other taxpayers parties who could not have brought the action, under Code Civ. Proc. § 723, providing that amendments in furtherance of justice could be allowed even if late.

    [Ed. Note.—For other cases, see Parties, Cent. Dig. § 96; Dec. Dig. § 60.*]

2. RAILROADS (§ 2*)—WHAT CONSTITUTES—BRIDGE COMPANIES—GRADE CROSSINGS.

    A bridge company maintaining and operating railroad tracks is a "railroad" within Laws 1911, c. 358, § 15, confirming the contracts of grade crossing commissioners with railroads in the city of Buffalo.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 2; Dec. Dig. § 2.*

    For other definitions, see Words and Phrases, vol. 7, pp. 5899–5908; vol. 8, pp. 7777, 7778.]

    Kruse and Robson, JJ., dissenting.

Appeal from Equity Term, Erie County.

Action by Henry H. Guenther and another against Maurice B. Patch and others. Judgment (76 Misc. Rep. 649, 135 N. Y. Supp. 629) for plaintiffs, and defendants appeal therefrom and from an order allowing an amendment of the complaint. Reversed on both appeals.

By chapter 345 of the Laws of 1888, as amended by chapter 144 of the Laws of 1906, the defendants Grade Crossing Commissioners, so called, were appointed commissioners, and as such were authorized "to enter into contracts from time to time on behalf of the city of Buffalo with any railroad company or companies or any terminal company organized for that purpose, and any bridge or other corporation owning or operating a steam railroad wholly or in part in said city, for the relief of the city from the obstruction of the streets of the city of Buffalo' by railroads crossing the same at grade upon plans adopted or to be adopted by said commissioners as hereinafter provided. All agreements so made shall be binding upon the city." By section 2A said commissioners were authorized to contract on behalf of the city of Buffalo with the railroad companies interested to eliminate all crossings at grade of the streets of the city by railroads on a number of streets designated by name, and, among others, "Niagara street at International Bridge."

On January 31, 1908, the defendants Grade Crossing Commissioners, having previously complied with all statutory requirements as to the adoption of plans and public hearings, entered into a contract with the defendant International Bridge Company for the elimination of the grade crossing of the bridge company's railroad tracks at Niagara street by raising the tracks and depressing the street, so that the street would pass under the railroad tracks by subway. The contract also provided for the closing of Dearborn street from the south line of Parish street to a point 250 feet southerly. Dearborn street is a parallel street to Niagara street and about 200 feet north

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thereof, and the part of Dearborn street specified in the contract to be closed is the part crossed at grade by 14 tracks of the bridge company, which connect with and are continued across the Niagara river at this point on the International Bridge by means of the two tracks of the bridge company which cross Niagara street. The contract also provides for opening a new street from Dearborn street to Niagara street, whereby traffic which, by the closing on this part of Dearborn street, is prevented from crossing these 14 tracks, may pass from Dearborn street to and from Niagara street, and use the subway under the bridge company's tracks.

The cost of this work was by the contract to be paid 65 per cent. by the bridge company and 35 per cent. by the city of Buffalo. The work provided for by this contract was proceeded with and finished before the commencement of this action, and some time in the year 1910, and fences were erected to accomplish the closing of the portion of Dearborn street mentioned. The total cost of the work was: To the city of Buffalo, $82,759.90; and to the bridge company, $120,141.48.

Each of the plaintiffs is the owner of a parcel of land fronting on Dearborn street. They joined together in bringing this action by the service of a summons upon the several defendants on different dates between May 25 and June 1, 1911. The complaint was served between the 10th and the 3d days of July, 1911. It alleged the ownership by the plaintiff Guenther, in common with others, of a parcel of land fronting on Dearborn street, on which was erected a dwelling house occupied by said Guenther as his residence, and the ownership by plaintiff Humphrey of another parcel of land fronting on the same street, upon which was a dwelling house occupied by said Humphrey as his residence. It then proceeds to allege the acts of the defendant commissioners in closing a portion of Dearborn street, and alleges that this action is illegal and null and void, and by reason thereof plaintiffs' "rights, privileges, and property have been greatly interfered with, injured, and damaged, a nuisance has been created thereby to the property, rights, and privileges of these plaintiffs, and the value thereof, as well as the use thereof, greatly diminished, to the great injury and damage of these plaintiffs." The relief demanded is that the contract for closing this part of Dearborn street be set aside, and the defendants enjoined from continuing or maintaining the obstructions in that street and directed to remove the same and abate said nuisance and restore Dearborn street to its condition before the creation of such nuisance, and for such other and further relief as to the court may seem just and proper.

On June 16, 1911, about 16 days after the summons had been served on all the defendants, chapter 358 of the Laws of that year took effect, and by section 15 of that act it is provided:

"All of the official acts of the grade crossing commissioners of the city of Buffalo or a majority of them, in making and executing any contracts with any railroad company for the purpose of carrying out any plan or plans of said commissioners and all contracts entered into by said commissioners with any railroad are hereby affirmed and ratified, and shall be held to be in full force and validity, and all the acts of said commissioners or a majority of them in making and executing any such contracts shall be adjudged to have been legally made and executed in any and all proceedings or contracts relating thereto or founded thereon, but nothing in this section shall affect any action or proceeding pending in any court when this act takes effect."

It is the contention of the appellants that the section quoted accomplished the legal closing of the part of Dearborn street in question, if its legality was before doubtful, as against the city of Buffalo, its inhabitants, and all other persons, except as respects the claims or rights which the plaintiffs were then seeking to protect or enforce by virtue of this action.

After issue had been joined by service of defendants' answers, and on or about January 30, 1912, plaintiffs served motion papers for leave to convert the action into a taxpayers' action for substantially the same relief, and to that end they asked to be permitted to amend the complaint to allege that they were taxpayers of the city of Buffalo, assessed for taxation each to the amount of $1,000 or more, and to allege that they bring this action "pur-

suant to the authority of the laws of the state of New York to prevent illegal official action on the part of the defendants, and each of them, pursuant to the provisions of section 51 of the General Municipal Law [Consol. Laws 1909, c. 24] and section 1925 of the Code of Civil Procedure and of the laws of the state of New York applicable thereto." And also asking that plaintiffs be permitted to file and serve a bond in the form and containing the conditions required by section 51 of the General Municipal Law, nunc pro tunc as of the date of the commencement of this action.

This motion was granted at Special Term on February 15, 1912, against the objection and protest of defendants, and from the order made on that motion the defendants, except the city of Buffalo, brought appeals to this court in due time. Notwithstanding these appeals, the cause subsequently came to trial upon the complaint as amended pursuant to the above-mentioned order, and has resulted in a judgment in favor of plaintiffs adjudging that the defendants the Grade Crossing Commissioners had no power or authority to enter into contract with the defendant International Bridge Company for the closing of this part of Dearborn street in connection with the elimination of the grade crossing of the International Bridge Company's railroad at Niagara street, from which judgment defendants have also appealed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

De Witt Clinton, of Buffalo, for appellants Grade Crossing Commissioners.

Adelbert Moot, of Buffalo, for appellant International Bridge Co.

Jeremiah J. Hurley, of Buffalo, for appellant City of Buffalo.

Philip A. Laing, of Buffalo, for respondents.

FOOTE, J. [1] We have first to determine whether the order of February 15, 1912, by which this action was converted from one in behalf of plaintiffs as property owners on Dearborn street to one by them as taxpayers in behalf of the city of Buffalo, was properly granted.

The question of the power of the court to permit such an amendment need not be considered. Assuming that the power exists and that the matter rests in the judicial discretion of the court, the question is: Was that discretion properly exercised in this case? Giving such permission to serve the amended complaint and to make and file the necessary bond to convert the action from an individual action into a taxpayers' action was granting a favor, for plaintiffs' time to amend had expired. Amendments such as these are to be granted only "in furtherance of justice," as the section of the Code conferring the authority expressly provides (section 723). Was it in furtherance of justice that plaintiffs should be permitted to litigate in behalf of the public against the closing of this part of Dearborn street, after the Legislature had by the special act expressly affirmed and ratified the same, and made the same entirely legal and valid against all the world except these two plaintiffs? The power of the Legislature to close or authorize the closing of this street by special act is not questioned. The courts, we think, are bound to assume that this special act was passed in the public interest, and that the public inconvenience, and the special inconvenience of those living in the immediate vicinity who were deprived of the use of this street across these railroad tracks, were duly considered by the Legislature and determined by it as out-

140 N.Y.S.—15

weighed by the public safety in doing away with this grade crossing of fourteen railroad tracks. Nevertheless, plaintiffs have been permitted, not as matter of right but as a favor, in furtherance of justice, not to plaintiffs alone but to them as taxpayers representing the city of Buffalo and its inhabitants, to so change the form of their action as that they may prevent this special act of the Legislature from having any effect whatever to validate the elimination of this particular grade crossing.

We think the discretion of the courts should be exercised in this case to give effect to the fair intent of this legislative act as fully as may be, reserving only to plaintiffs the right to maintain and assert in this action such individual or property rights as they may have. The relief which has been granted to plaintiffs in this case is not based upon any personal or property rights peculiar to themselves. While they are each property owners upon Dearborn street, it was held at the trial that it was not necessary for plaintiffs to show an injury to themselves to maintain this action, and it was further held that it did not appear that plaintiffs had suffered any injury peculiar to themselves. So the action proceeded and was determined entirely upon the ground that the city of Buffalo and its inhabitants and taxpayers had the right to have this closed portion of Dearborn street reopened for public use. The Legislature has, in effect, said that the city of Buffalo, its inhabitants and taxpayers, other than those two plaintiffs, have no such right. This result has been brought about by the exercise of the judicial power to grant amendments in furtherance of justice.

We think that the claims of justice in this case require that full effect should be given to the act of the Legislature, and that plaintiffs should not have been permitted to change the form of their action so as to proceed in behalf of the city and its other inhabitants, as to whom the supposed illegal action of the Grade Crossing Commissioners had been made entirely legal and valid before such change was made, and none of them could, on their own account, have maintained such an action.

Our conclusion is that the order permitting plaintiffs to amend their complaint and convert this action into a taxpayers' action was improvidently granted.

[2] It is contended by respondents that the special act does not apply, because by its terms it ratifies and affirms only the official acts of the Grade Crossing Commissioners "in making and executing any contracts with any railroad company"; whereas, the contract involved here is made with the International Bridge Company. This contention, we think, should not be sustained. The bridge company is, we think, a railroad company within the intent and meaning of this act. It maintains and operates railroad tracks across Dearborn street and Niagara street and over its bridge across the Niagara river. This is exclusively a railroad bridge, and these tracks are used by connecting railroads across this bridge. Such was the construction given by the Supreme Court of the United States in U. S. v. Delaware & Hudson Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836, as respects the application of the Hepburn Act, so called, to the defendant in that

case, which had been chartered as a coal mining company and authorized to construct a canal to transport its coal, and many years later authorized to construct a railroad for the transportation of its coal and as incident to its coal mining business. It was held to be a railroad company within the intent and meaning of that act, and we think it should be held that the defendant bridge company is a railroad company within the intent and meaning of the special act in question.

Without considering the other questions presented upon these appeals, our conclusion is that the order permitting plaintiffs to amend their complaint and to make and file a bond nunc pro tunc should be reversed, and that the judgment appealed from should be reversed and a new trial ordered, with separate bills of costs to the defendants appearing by separate counsel to abide the event. All concur, except KRUSE and ROBSON, JJ., who dissent in a memorandum by KRUSE, J.

KRUSE, J. (dissenting). If, in eliminating the grade crossing at Niagara street, it was necessary to close Dearborn street, I think the Grade Crossing Commissioners had power to contract with the defendant bridge company, as was done, for closing that street, and that the city is justified in permitting the same to remain closed. But the evidence seems to show, and the trial judge finds, that the closing of Dearborn street was not a necessary part of the grade crossing work in Niagara street. Assuming, as I think we should, that it was necessary to raise the tracks eight inches at Dearborn street, that did not make it necessary to close the street as has been done.

It is contended, however, that the validating statute (Laws of 1911, c. 358, § 15), which ratifies and confirms the official acts of the Grade Crossing Commissioners in making contracts with any railroad company to carry out the plans of the commissioners, has the effect to ratify the contract for closing Dearborn street. I agree with the learned counsel for the bridge company that his company is within the general provision of the act. It seems to me, however, that the exception therein contained, which provides that the section shall not affect any action or proceeding pending in any court, takes this action out of the effect of that provision. The summons was served before the act was passed, although the undertaking necessary in a taxpayers' action was not given until afterward. That was not done until an order was made at Special Term permitting that to be done nunc pro tunc and allowing plaintiffs to amend their complaint. That order, as well as the judgment itself, is challenged upon this appeal; the contention being that there was a new cause of action substituted for that set forth in the original complaint. I think the change was in procedure, or form of the action, rather than in substance. The purpose of the action and the relief sought is the same in the amended complaint as in the original complaint. Furthermore, I am of the opinion that a strict taxpayers' action was not necessary, and that the giving of the undertaking and the allegations respecting the same may be regarded as mere surplusage.

If Dearborn street was not lawfully closed at this point, it was the duty of the city to prevent obstructing the street and to take action

to open it after it had been closed; but the city contends that it was lawfully closed and refuses to open the same. In such a case, when the city itself refused to protect the rights of the public to the use of the street, the plaintiffs had the right to bring the action and make the city a party under the rule that, where a trustee refuses to perform his duties, the cestui que trust may bring the action to enforce the obligation enjoined upon the trustee. Overton v. Village of Olean, 37 Hun, 47. Whether the question is to be determined by the original complaint or by the amended complaint, or by the mere service of the summons alone, I think the cause of action was saved by the exception.

I may add that, if the plaintiffs are not entitled to the relief awarded by the judgment, I do not see how they can maintain the action at all, so far as anything is disclosed by this record, and the complaint might as well be dismissed here.