(109 App. Div. 454.)

MANDER et al. v. COLEMAN, MAYOR, et al.

(Supreme Court, Appellate Division, Third Department. November 15, 1905.)

MUNICIPAL CORPORATIONS—POWER TO INCUR EXPENDITURES—SUBMISSION TO POPULAR VOTE.

Elmira City Charter (Laws 1894, p. 1402, c. 615, as amended by Laws 1904, p. 930, c. 367) § 31, subds. "a–h," authorize the common council to raise money not exceeding a certain amount for the general fund and for special funds for the various city departments. Subdivision "i" provides for the raising of a sufficient sum to pay the principal and interest coming due on all bonds issued by the city, and for all other liabilities of the city for the payment of which provision shall not be otherwise made. Section 71 requires the submission to popular vote of the question of expenditures for any extraordinary or special purpose. Held, that the raising of a sum of money for the erection of a garbage crematory, which, in addition to the amount otherwise provided for under the provisions of section 31, subds. "a–h," would exceed the amount prescribed in that section, is not within the provision of subdivision "i," but must be submitted to popular vote as provided by section 71.

Appeal from Special Term, Broome County.

Action by Charles Mander and another against William T. Coleman, as mayor, etc., and others. From an order vacating a preliminary injunction, plaintiffs appeal. Reversed.

Appeal by the plaintiffs from an order of the Broome Special Term, dated the 5th day of July, 1905, and entered in the office of the clerk of the county of Chemung on the 21st day of August, 1905, vacating an order theretofore granted in the action. The city of Elmira is a municipal corporation having a special charter, which provides, among other things:

"Sec. 31. It shall be the duty of the mayor at the first meeting of the common council after this act shall become a law, or as soon thereafter as may be, and in the year nineteen hundred and five and thereafter annually, the contingency will be taken care of at a regular meeting of the common council held not earlier than the first day of February, and not later than the fifteenth day of February in each year, to present to said common council a statement in writing containing an estimate of the amounts or sums of money necessary to be raised for defraying the expenses of the city for the current year. Such statement shall contain:

"(a) An estimate of the sum necessary for defraying the salaries and pay of officers other than officers and employees in the fire, police and park departments, and other contingent expenses of the city not otherwise provided for, to be designated 'general fund.'

"(b) A sum necessary to defray the expenses of the police department, including the salaries of the officers of said department, to be designated 'police fund.'

"(c) A sum necessary for lighting the streets, lanes and public buildings of the city and the cost and expenses of maintaining and keeping in repair the lamps, lamp posts, and all necessary fixtures connected therewith, to be designated 'lamp fund.'

"(d) A sum necessary for building, grading, repairing, cleaning and keeping in good order the unpaved streets, for cleaning paved streets, for cleaning, repairing and building crosswalks, for putting down superficial macadam and cleaning and repairing the same, to be designated 'street fund.'

"(e) A sum necessary to defray the expenses of building, rebuilding and repairing bridges, culverts, sluiceways and for cleaning out creeks and water courses, to be designated 'bridge and water course fund.'

"(f) A sum necessary to defray the expenses of constructing, repairing and keeping in order the sewers, to be designated 'sewer fund.'

"(g) A sum necessary for maintaining and improving the public parks and the property belonging therein, to be designated 'park fund.'

"(h) A sum necessary for supplying and keeping in good condition and repair fire engines, engine houses, fire alarm telegraph, teams and other things, deemed necessary for the extinguishment of fires, and for paying the salaries and wages of the officers and employees of the fire department and to procure a supply of water for the extinguishment of fires, to be designated 'fire department fund.' Provided, that for all the purposes in this section above stated, the said estimate and the sum voted therefor in pursuance of section fifty-one of this act, shall not exceed one hundred and seventy five thousand dollars.

"(i) A sufficient sum to pay interest on all bonds issued by said city, or for which it may be liable, and also all the principal and installments of principal of said bonds falling due within the then current year, and for all other liabilities of said city, for the payment of which provision shall not be otherwise made."

Chapter 615, p. 1402, Laws 1894, as amended by chapter 367, p. 930, Laws 1904.

"Sec. 51. Upon the receipt by the common council of the estimate made by the mayor of said city of the amount of the several sums necessary to be raised for defraying the expenses of said city for the current year, as hereinbefore provided, which estimate shall be immediately thereafter published in all the daily newspapers of said city, they shall, at the next stated meeting or at the next subsequent meeting proceed to consider such estimate and

make such corrections and alterations therein as they shall consider necessary and proper, and when such corrections and alterations are completed they shall, by a vote of a majority of the aldermen in office, declare that the several sums so estimated and agreed upon by them shall be raised for defraying the necessary expenses of the city for the then current year, and such estimate and resolution shall be immediately thereafter published in all the daily newspapers of said city. The common council after having fixed and determined the several sums necessary to be raised for the expenditures of said city for the current year are hereby expressly limited to the several amounts of such expenditures and for the purposes in said estimate specified, and are hereby prohibited from increasing or appropriating the same for any other purpose except as is provided in section seventy-one of this act."

Chapter 615, p. 1422, Laws 1894, as amended by chapter 367, p. 939, Laws 1904.

"Sec. 71. Whenever the common council shall be of the opinion that the interests of said city require the expenditure of money for any extraordinary or special purposes, which, in their opinion, cannot be paid from the sums authorized to be raised by this act, after appropriating the same, and defraying the ordinary expenses, or that the ordinary current and contingent expenses of any year cannot be defrayed without raising an additional sum as a contingent fund, they may make an estimate of the sum necessary to be raised for said purpose, and each of them, if there be more than one such subject, and shall state the amount and the objects for which it is required together with the reason for their opinion. * * *"

Chapter 615, p. 1422, Laws 1894, as amended by chapter 367, p. 939, Laws 1904.

Said section 71 further provides for publishing the statement and estimate, and for submitting the question to the qualified voters of the city for determination, and, if the special tax is authorized, for borrowing the money in anticipation of the collection of the tax and for carrying out the purposes for which the tax is authorized.

"Sec. 72. The common council shall not borrow and is hereby expressly prohibited from borrowing any money on account of the city except as hereinbefore provided, and except for the purpose of anticipating as far as may be necessary, the receipt of the general annual tax; and all sums borrowed for that purpose shall be paid within the fiscal year in which the same are borrowed and from the tax assessed for that year. The said council shall not create any pecuniary obligation whatever on the part of the city, except as herein otherwise provided which shall not be payable within the year for which the council creating said obligation was elected and which cannot be discharged from the income of the same year, but this prohibition shall not affect the provisions of this act hereinbefore contained in regard to obligations for or respecting the expenditures of any sum raised by special tax. The civil year in said city shall be deemed to commence on the first day of January."

Chapter 615, p. 1424, Laws 1894, as amended by chapter 367, p. 942, Laws 1904.

In the year 1904 a committee was appointed by the common council to inquire into the best method of collecting and disposing of garbage and refuse, and in case the committee found that the operation of a plant under city control was impracticable they were authorized to receive bids for the collection and disposal of garbage and refuse in the city and enter into a contract for such purpose, subject to the approval of the council. On the 5th day of December, 1904, the committee reported to the common council that they had adopted specifications providing for collecting and disposing of garbage separately and together by private contractors and that they had advertised for bids therefor, but that no bids were received, and that they then adopted specifications for the construction of a garbage plant to be owned by the city and that they had advertised for bids therefor, and that they had received bids, which they reported to the common council, and they recommended that a contract be awarded to the Clinton Foundry & Machine Company for the construction of a garbage disposal plant. The

report of the committee was accepted and further consideration thereof was deferred.

On February 1, 1905, the mayor presented to the common council an estimate in writing of the amounts necessary to be raised for defraying the expenses of the city for the current year, as provided by said section 31 of the charter, and the amount so reported by him for the different funds mentioned in subdivisions "a" to "h," inclusive, of said section, aggregated $169,900. No estimate was made and nothing was said therein about the erection of a garbage plant or a proposed expenditure therefor. The estimate also included amounts for interest and principal falling due on city bonds and for paving, school, and library purposes. At the same meeting of the common council a resolution was passed authorizing the mayor to enter into a contract with the Clinton Foundry & Machine Company for the erection of a garbage plant for $16,277. At a meeting of the common council February 6, 1905, said estimates by the mayor were considered, and corrections and alterations were made, which changed the aggregate amount of the eight items mentioned in subdivisions "a" to "h," inclusive, of said section 31, to $170,900, and also changed somewhat the amounts for principal falling due on city bonds and for school purposes, and then added to said estimate an item of $10,000 "to apply on the contract authorized and directed by a resolution of the common council February 1, 1905, for the construction of a garbage crematory," and they proceeded to levy and assess the total amount of said estimates as so corrected and altered upon the taxable inhabitants and property of said city.

At the meeting of the common council February 1, 1905, a committee of five, including the mayor, were appointed to negotiate for a site for the garbage crematory. Subsequently others were added to such committee, and they were given full power to secure a site for the garbage crematory, either by purchase or contract. On the 7th day of April, 1905, such committee procured a deed for a lot on Baldwin street as a site for the crematory. The agreed purchase price of said lot was $1,500, but it has not been paid, and the committee subsequently determined that such lot was unsuitable for its purpose, and on May 19, 1905, they purchased a further site for such crematory on Tuttle avenue; the consideration therefor being $1,500, but no part thereof has been paid. The boundary of the city of Elmira passes through the lot last mentioned, but substantially all of said lot is outside of the boundaries of the city.

The Clinton Foundry & Machine Company sublet its contract for the erection of the crematory, and the subcontractor at the time of the commencement of this action was actually engaged on the lot last mentioned in the erection thereof. This action is brought, among other things, to restrain the collection of the taxes, other than the school tax, levied by the common council February 6, 1905; also to restrain the payment by the city of the purchase price of said lots of land, or on account of said contract for the erection of said plant; also to restrain the contractor and subcontractor from proceeding with such construction.

The plaintiff insists: "(1) That the placing in the budget or tax levy of the sum of $10,000 to apply on said contract for the erection of a garbage plant increased said budget or tax levy beyond the amount authorized by the charter of said city to be raised by taxation. (2) That the purchase or attempted purchase of lands for a site for said garbage plant was illegal, because no appropriation had been made for the payment therefor. (3) That the common council of said city had no power to delegate to a committee of its body the authority to select and purchase a site for said garbage plant. (4) That the common council had no power to purchase lands outside of the city of Elmira for a site for said garbage plant without express legislative authority, and that by the deeds of said lands to the city said city took no title. (5) That the purchase of lands for a site and the erection of a garbage plant thereon involved an extraordinary expenditure, which could only be made after a submission of the question whether such expenditure should or should not be made to the taxpayers of said city at a special election, as provided by section 71 of the charter."

An injunction substantially in accordance with the demand of the complaint was obtained, to continue during the pendency of the action. Such injunction was thereafter modified, so as to allow the chamberlain of the city to receive such taxes as should be voluntarily paid to him. The preliminary injunction was thereafter vacated and set aside, and from the order vacating and setting aside said injunction this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

A. C. & J. P. Eustice, for appellants.

Richard H. Thurston, for respondents.

CHASE, J.   The evident purpose and intention of the charter of the city of Elmira is to restrict expenditures by the common council for the ordinary expenses of the city to $175,000 for the current year. Such restriction upon the expenditures is exclusive of interest and principal falling due within the current year on bonds issued by the city and of all other liabilities of the city for which other provision is not made (sudivision "i," § 31, of the charter [Laws 1894, p. 1402, c. 615, as amended by Laws 1904, p. 930, c. 367]), an amount not exceeding $25,000 for paving (section 148 of the charter [Laws 1894, p. 1451, c. 615, as amended by chapter 371, p. 532 of the Laws of 1895]), an amount necessary for the maintenance of the public schools (section 223 of the charter), and an amount for library purposes. The common council is limited in its expenditures to the several amounts fixed and determined by it to be raised for the current year and to expenditures for the purposes in its estimate specified, except as prescribed in section 71 of the charter (see section 51 of the charter), and also except that certain transfers of funds are authorized from the general fund of the city for specified purposes not affecting the questions now considered (sections 173, 181, of the charter). The expenditure of money for any extraordinary or special purpose which in the opinion of the common council cannot be paid from the sums authorized by the charter to be raised after appropriating the same and defraying the ordinary expenses, or raising a sum over and above said $175,000 for the ordinary current and contingent expenses of any year, is wholly dependent upon a favorable vote of the qualified voters of the city. The item of $10,000 to apply on the contract for a garbage crematory clearly cannot be considered as a part of the fund specified in subdivisions "b" to "h," inclusive, of said section 31. It is not an expense to be paid from the contingent or general fund. If it is conceded that the contract or contracts towards which it is proposed to pay the $10,000 constitute expenses of the city, they are fixed and determined expenses, and not such expenses as come within the term "contingent." Contingent expenses are such as are possible or liable, but not certain to occur. Webster's Dictionary. If the $10,000 is treated as a part of the contingent expenses provided for by subdivision "a" of said section 31, it would make the amount to be raised under said subdivisions "a" to "h," inclusive, of said section 31, exceed the limit of $175,000, which is prohibited by that section. The respondents are therefore forced to insist, if

at all, that the consideration named in said deeds and the amount of the contract for the erection of said crematory are liabilities of said city within the meaning of subdivison "i" of said section 31.

If the common council can make the amount to be paid under any agreement that it may authorize a liability against the city, so that it can be placed in the amount to be raised by tax under said subdivision "i" of said section 31, it necessarily follows that the provisions of the charter requiring that all questions as to extraordinary and special expenditures be submitted to the qualified voters of the city, and also the limitation on the amount to be raised for current expenses, are wholly useless as protective measures. The purpose of the limitation on the power of the common council would by such construction be subverted and overcome by a part of the very section in which the limitation is stated. Such a construction would leave the common council entirely unrestricted in their authority to expend money for any city purpose. The liabilities of the city mentioned in said subdivision "i" of said section 31 are fixed and adjudged liabilities, and not claims for current and extraordinary expenditures, created, if at all, only by contract of the common council or of some city officer. It is only liabilities by statute, by judgment, or of the class and solemnity of bonded indebtedness, that can be intended by said subdivision of said section. In carrying out the plain purpose and intention of the charter we must hold that there is no power in the common council to expend money or enter into contracts so as to bind the municipality for any extraordinary or special purposes which cannot be paid out of the sums authorized to be raised for current or special expenses as stated until there is a favorable vote upon the proposition to make such extraordinary and special expenditures by the qualified voters of the city in the manner provided by the charter. The building of a garbage crematory was an extraordinary and special purpose which requires a vote of the qualified voters of the city of Elmira, and a favorable vote in the manner prescribed by the charter for such expenditure is the first and preliminary step in relation thereto, and any contract relating to the erection of such garbage crematory without the money to pay therefor in advance of such favorable vote by the qualified voters was premature and unauthorized, and cannot be enforced, unless ratified after a vote in favor of such expenditure has been taken. If we are correct in the views expressed, it is unnecessary and unwise to discuss the other questions presented on this appeal, as they may not arise in the same way again.

The order should be reversed, with $10 costs and disbursements, and, the parties to the action assenting thereto, without prejudice to the right of the city to review this decision or hereafter to contend that said contracts are in all respects legal. The preliminary injunction, as modified, is further modified, so as to enjoin only the making of payments under said contracts, or either of them, and the doing of any act in further performance thereof. All concur, except HOUGHTON, J., not voting, not being a member of the court at the time this decision was handed down.