JAMES W. WADSWORTH, Plaintiff, *v.* AUSTIN W. ERWIN, Defendant.

Supreme Court, Livingston County, March 25, 1925.

Public officers — fees for services — taxpayer's action to recover moneys for county of Livingston paid to member of board of supervisors of said county for legal services and disbursements in condemnation proceedings — board of supervisors had power to delegate said member to conduct proceedings, pursuant to County Law, § 23, subd. 8 — said delegation not prohibited by Penal Law, § 1868 — failure of plaintiff to file bond under General Municipal Law, § 51, warrants dismissal of complaint — complaint set out second cause of action for refund of money paid said supervisor for legal services performed for superintendent of poor of said county — claim audited by superintendent of poor, pursuant to Poor Law, § 3, subd. 11 — failure of board of supervisors to audit claim does not invalidate payment — complaint defective for failure to show services not rendered for county.

A complaint in a taxpayer's action to recover moneys alleged to have been illegally paid a member of the board of supervisors of the county of Livingston for legal services and disbursements in connection with certain condemnation proceedings should be dismissed in the absence of any allegation that the services were not rendered, were not valuable or worth the amount paid or that there was any collusion, fraud or bad faith in connection with the transaction, since the board of supervisors pursuant to subdivision 8 of section 23 of the County Law, had power to delegate the conduct of the condemnation proceedings to one of its members and said delegation is not the making of a contract, prohibited by section 1868 of the Penal Law.

Moreover, said complaint is defective in that it fails to allege the fact that plaintiff filed a bond upon the commencement of the action in accordance with the provisions of section 51 of the General Municipal Law

A second cause of action in said complaint for the refund of moneys paid said supervisor for legal services performed for the superintendent of the poor of said county also should be dismissed in the absence of any allegation to show that the services were not rendered for the county, where said claim had been audited by said superintendent of the poor pursuant to the provisions of subdivision 11 of section 3 of the Poor Law. The fact that the board of supervisors did not audit the claim, though it was submitted to it, does not invalidate the payment.

MOTION to dismiss complaint in taxpayer's action.

*Cook & Horton* [*Fred A. Robbins* of counsel], for the plaintiff.

*Wile, Oviatt & Gilman,* for the defendant.

RODENBECK, J.:

This is an action by a taxpayer to recover moneys for the county of Livingston, paid for services and disbursements of a member of the board of supervisors, instituted on the ground of want of authority to authorize the employment; where it appears that the services were rendered and the disbursements made without col-

lusion, fraud or bad faith and where the services were of a substantial and valuable character and the county accepted and still retains the benefits thereof; except as to a portion of the moneys received, not revealed, which it is claimed were received for personal services to the superintendent of the poor.

Illegality is all that is claimed but it is an effective plea against a public officer who receives public moneys not authorized by law, although he gives value and in good faith, but not, it seems, against a public officer who pays such moneys, who must be shown to have acted in bad faith or with collusion or fraud. " We must distinguish the liability of those who receive from the liability of those who pay." (*Stetler* v. *McFarlane*, 230 N. Y. 400.) Good faith is a defense in one case but not in the other. The distinction is not free from criticism where the services are substantial or where valuable property has been received or disbursements have been made. Ignorance of the law ought not to excuse in one case any more than in the other. The public officer who pays the money is no better than he who, giving value, receives it. Public policy should require the one as well as the other to stand back of his acts within the same rule. The rule of collusion, fraud and bad faith is even extended to cases where a joint liability is sought, the payee being joined with the payer. (*Wallace* v. *Jones*, 195 N. Y. 511; *Daly* v. *Haight*, 224 id. 726.) So that it is not a question of the rendition of services and payment of disbursements, of the acceptance and retention of beneficial work and expenditures by the county, the adequacy of the returns for the moneys received, of good faith and equity, as claimed by the defendant, but, under the decisions, one purely of the legality of the transaction.

It is a taxpayer's action governed by statute, one of the provisions of which is that upon the commencement of the action a bond shall be furnished. (General Municipal Law, § 51.) A bond was furnished but it did not comply with the statute which provides that " if there be more than one party plaintiff," and there was in this case when the action was brought, any two of the plaintiffs " shall severally justify in the sum of five thousand dollars." The bond furnished was executed by one of the plaintiffs and two sureties and even if the sureties, being freeholders of Livingston county, are to be treated as two of the plaintiffs, they justify only in the sum of $1,000. This is not a bond in accordance with the statute and was not sufficient to support the action and is not now sufficient since the amendments reduce the parties plaintiff to one who does not justify at all. These are not technicalities but conditions upon which alone the action may be maintained. The bond must now be treated as a nullity and the plaintiff is in the position of one

commencing such an action without giving a bond. Such an action without a bond cannot be maintained and it is not a question of requiring the plaintiff to file a bond *nunc pro tunc* but of the proper institution of the action. The compliance with this requirement of the statute should have been alleged in the complaint. It is a condition of the maintenance of the action without which the action cannot be maintained and unless alleged and proved the action fails. It is not a mere matter of proof but a necessary allegation of the right of the plaintiff to commence the action and hence a part of the cause of action itself.

But if the filing of the bond be a mere matter of form, compliance with which is to be enforced by the defendant, the complaint does not set out a cause of action. The first cause of action is based upon the receipt of moneys for services and for disbursements in connection with condemnation proceedings in which the defendant supervisor was delegated or engaged or employed to do legal work for which some one had to be employed as the board as a whole could not do the work and did not possess the requisite professional training if it attempted to do it. The board was authorized to acquire lands by condemnation for highway purposes (Highway Law, §§ 148, 150, as respectively amd. by Laws of 1924, chap. 460, and Laws of 1922, chap. 371), and, it being impracticable for it to conduct the proceedings as a body, it had authority and was compelled to delegate the conduct of the proceedings to some attorney or counsel. (*People ex rel. Vaughn* v. *Supervisors*, 52 Hun, 446, 449.) The only question is, whether or not it could delegate the work to the defendant, one of its members. It would be absurd to criticise the board for delegating this work to some one skilled in these proceedings, and if there was some member of the board who had the requisite training, there is no reason why the work could not be delegated to him. The members of a board of supervisors are not limited to the compensation that they receive for attending sessions of the board. There are many other services for which they may legally be paid. It is the common practice for individual members or committees to perform such additional services and to receive compensation therefor. The statute authorizes it. A supervisor of Livingston county may receive compensation for any services in connection with the ministerial business of the board which has been lawfully committed to him, that is, " in any investigation or other duty which may be lawfully committed to him by the board, except for services rendered when the board is in session." (County Law, § 23, subd. 8, as amd. by Laws of 1919, chap. 497.) The work which the defendant performed, not being such as the board could conveniently discharge itself or through a committee, was

properly delegated to the defendant. The test is the nature of the service, not the designation of it as professional service or as the employment of the defendant as an attorney and counsel. These descriptions could not change the legality of the delegation or the work performed or its payment. The defendant was engaged to do work or to perform a duty cast upon the board and the board could properly delegate this work or duty to one of its members and pay him the amount provided by statute and his disbursements. There is no allegation in the complaint that the services were not rendered, were not valuable or worth the amount paid for them or that there was any collusion, fraud or bad faith in connection with the transaction. The allegations that they were illegal and that the audit was unlawful, are mere conclusions that will not put the defendant to his defense. The cause of action is not helped out by the allegation that the services were not rendered while engaged in any investigation or duty which might lawfully be committed to him by the board. The complaint should show by facts that the services were such that they could not be delegated, otherwise they are presumed to be within the authority of the board to delegate. The burden is on the plaintiff in charging the defendant with having received public moneys illegally and the court will not draw an inference of illegality from facts that do not require it. The defendant should not be called upon to answer a charge " in the air." He is entitled to have the complaint state the facts showing the illegality. It is not enough to allege that he was an attorney and a member of the board and that the board employed him to conduct condemnation proceedings. The board had the right to delegate this work to him and it does not change the legal relations of the parties by calling the transaction an employment. This is a mere matter of nomenclature which does not go to the essence of the transaction, a delegation by the board to one of its members skilled in the law, to perform a service which it was authorized to do but which from want of experience it could not do. This is not a case of making a contract with the defendant but one of delegation by the board to perform services and, therefore, not within section 1868 of the Penal Law. The first cause of action is not well founded.

The second cause of action is also ill founded. This part of the complaint is based upon the claim that the defendant performed services for the superintendent of the poor for which he was not entitled to receive compensation from the county. The nature of these services is not shown except that it is alleged that a part of it was personal services for the superintendent and not public services for the county. This allegation is a mere conclusion

and is not sufficient to sustain a cause of action. The character of the services should be disclosed so that the court may determine whether or not they are of a personal and not of a public character. Perhaps when they are described it will be found that they are not of a personal nature and that the plaintiff is wrong in his characterization. A superintendent of the poor, like a board of supervisors, cannot discharge all of his duties personally and may employ others to assist him and may pay them within the appropriations made by the board of supervisors. (Poor Law, § 3, subd. 15.) There is no such relationship between a superintendent of the poor and a supervisor as to preclude the latter's employment. There is no statutory prohibition upon either in this respect. Without such a restriction, they may contract for public services in connection with the performance of ministerial duties cast upon the superintendent by law, within appropriations made. There is no statute and no rule of public policy which prohibits a superintendent of the poor of Livingston county from obtaining the services of an attorney on matters relating to his public duties even if he happens to be a member of the board of supervisors. And, having done so, he is authorized to " audit and settle * * * for services relating to the support, relief or transportation of the county poor; and draw on the county treasurer for the amount of the accounts which they shall so audit and settle." (Poor Law, § 3, subd. 11.) He has a distinct fund for that purpose (Poor Law, § 11) and a power to audit. (Poor Law, *supra;* County Law, § 24.) This is the course that was followed in this case and there is no question of public policy involved in auditing and settling his own contracts any more than there is in the audits of the board of supervisors of the contracts that they make. The audit was reported to the board of supervisors and if they failed to act on it, it was no fault of the defendant. If the services performed were public and were authorized, and there is nothing in the complaint to show the contrary, except conclusions of law or fact, the superintendent had the power to audit, settle and pay for them, which was done in this case. In the absence of facts showing that the services, describing them, were such that the defendant could not legally perform them and charge the expense to the county, the complaint should be dismissed.

The complaint is dismissed upon the ground that the complaint does not state a cause of action, with leave to amend within twenty days from the service of a copy of an order in accordance herewith and upon the payment of ten dollars costs.