George H. Burns, Plaintiff, *v.* City of Watertown and Others, Defendants.

Martin J. Shaughnessy and Others, Plaintiffs, *v.* City of Watertown and Others, Defendants.

Supreme Court, Jefferson County, September 10, 1925.

Municipal corporations — taxpayer's action under General Municipal Law, § 51 — bond executed by single plaintiff and by two sureties is sufficient though plaintiff does not justify — under General Construction Law, § 14, undertaking may be given in lieu of bond — bond where there are two or more plaintiffs must be executed by at least two plaintiffs — failure of both plaintiffs to execute bond may be remedied under Civil Practice Act, §§ 105 and 150, by filing proper bond nunc pro tunc — taxpayer's action to restrain city of Watertown from proceeding with contract for erection of lighting plant and from making payments thereunder by city acceptances — parties — contractor is necessary party — contractor properly brought in under stipulation — city is governed under Optional City Government Law (Laws of 1914, chap. 444) — contract involved $245,000 and was let by common council without submitting proposition to voters — said contract involved " extraordinary expenditures " within meaning of Watertown city charter (Laws of 1923, chap. 660), §§ 152 and 153 — proposition should have been submitted to people — construing said sections and §§ 244–246, common council did not have power to borrow money for purpose of contract without submitting question to people — power is not given common council by Watertown city charter, § 152, subd. 4, or § 57 — common council can determine only in first instance whether " extraordinary expenditures " should be made — injunction pendente lite continued.

In a taxpayer's action brought under section 51 of the General Municipal Law by a single taxpayer, a bond executed by the plaintiff and two sureties in an amount approved by the court, complies with said section, although the plaintiff does not justify.

An undertaking may be executed under section 51 of the General Municipal Law in lieu of the bond there required, since it is provided by section 14 of the General Construction Law that a provision of law authorizing or requiring a bond shall be deemed to have been complied with by the execution of an undertaking to the same effect.

In a taxpayer's action brought under section 51 of the General Municipal Law by two or more taxpayers, the bond required by that section must be executed by at least two of the plaintiffs who must also justify on the bond, for section 51 specifically so requires, but where a bond in a taxpayer's action commenced by two or more plaintiffs is executed by one only, the defect may be cured under sections 105 and 150 of the Civil Practice Act by filing a proper bond *nunc pro tunc* on leave of the court.

In a taxpayer's action to restrain the city of Watertown and its mayor and common council from proceeding with a contract executed between a contractor and the city for the construction of a lighting plant and to restrain the city from

making payments thereunder by city acceptances, the contractor is a necessary party defendant.

In this action, since the contractor appeared generally and stipulated that it might be made a party defendant, and that the motions in this proceeding to continue the temporary injunction be heard and decided with the same force and effect as if made after the contractor had been made a party, orders may be entered carrying out the terms of the stipulation.

The common council of the city of Watertown, which city is governed under the Optional City Government Law (Laws of 1914, chap. 444), did not have power to enter into a contract for the construction of a city lighting plant involving $245,000, to be paid for by city acceptances, without submitting the proposition to the voters of the city, for the common council under sections 152 and 153 and 244–246 of the Watertown city charter (Laws of 1923, chap. 660) does not have power to borrow money for the payment of the cost of the construction of the city lighting plant, since it is provided by section 152 that in the case of any " extraordinary expenditures " the common council must submit the proposition to the voters of the city, and since it must be held, as a matter of law, that the construction of a municipal lighting plant costing $245,000 involved " extraordinary expenditures."

Subdivision 4 of section 152 of the charter, which authorizes the common council to issue bonds of the city or city acceptances from time to time to defray the cost of building, rebuilding or extending subways, bridges or public buildings, or opening or extending or widening the streets or for the extension, repair or alteration of water system " or for any other purpose authorized in this act, or by any provision of law," did not authorize the common council of the city of Watertown to enter into the contract and to issue city acceptances to make payment thereon, notwithstanding section 57 of the charter which expressly empowers the common council to engage in municipal lighting, for that is not " any other purpose " contemplated by subdivision 4 of section 152.

Under section 153 of the charter the common council is given power in the first instance to determine whether an extraordinary expenditure should be made and it is not given the power by said section to determine what is or what is not an extraordinary expenditure.

Since the execution of the contract in question and the expenditures therein contemplated are illegal acts on the part of the defendants, which if carried out will cause a waste of the public funds of the city of Watertown, their commission during the pendency of the action should be restrained and the temporary injunction is, therefore, continued.

MOTION to continue injunction in taxpayers' actions.

*Conboy & Hendricks,* for the plaintiff George H. Burns.

*Charles A. Phelps [Louis L. Waters* of counsel], for the plaintiffs Shaughnessy and others.

*Francis K. Purcell, Corporation Counsel [Delos M. Cosgrove* of counsel], for the defendants City of Watertown and others.

*Breen, Reeves & Smith,* for the defendant Donovan Construction Company.

CHENEY, J.   These two actions are brought as taxpayers' actions to restrain the commission of certain official acts by the defendants

other than the city of Watertown, who are the mayor and councilmen of said city, on the ground that they are illegal and constitute waste of the funds of said city. An injunction has been granted in each of the cases, with an order to show cause why it should not be continued *pendente lite,* and the matter is before the court upon the return of such orders to show cause. As the alleged illegal acts complained of and the relief asked in each case are the same the two cases will be considered together.

Certain preliminary objections were urged at the hearing of the motion and should be first considered. The actions are both brought pursuant to section 51 of the General Municipal Law. Defendants contend that the bonds given and filed do not comply with the requirements of that section; that the giving of the bond is a condition precedent to the maintenance of the action; hence, as plaintiffs must necessarily fail upon the trial, the injunction should not be continued *pendente lite.*

Section 51 of the General Municipal Law provides that any person or corporation whose assessment, or any number of persons or corporations jointly, the sum of whose assessments shall amount to $1,000, may bring an action to prevent an illegal act by the officers of a municipality, or to prevent waste of the property or funds of such municipality. It further provides: " Such person or corporation upon the commencement of such action, shall furnish a bond to the defendant therein, to be approved by a justice of the Supreme Court or the county judge of the county in which the action is brought, in such penalty as the justice or judge approving the same shall direct, but not less than two hundred and fifty dollars, and to be executed by any two of the plaintiffs, if there be more than one party plaintiff, providing said two parties plaintiff shall severally justify in the sum of five thousand dollars. Said bond shall be approved by said justice or judge and be conditioned to pay all costs that may be awarded the defendant in such action if the court shall finally determine the same in favor of the defendant. The court shall require, when the plaintiffs shall not justify as above mentioned, and in any case may require two more sufficient sureties to execute the bond above provided for. Such bond shall be filed in the office of the county clerk of the county in which the action is brought, and a copy shall be served with the summons in such action. If an injunction is obtained as herein provided for, the same bond may also provide for the payment of the damages arising therefrom to the party entitled to the money, the auditing, allowing or paying of which was enjoined, if the court shall finally determine that the plaintiff is not entitled to such injunction."

It is difficult to determine from the language used precisely

what is required in this bond. It may be fairly said that it was the intention of the Legislature to require as a condition to the maintenance of such an action, that there should be given contemporaneously with the commencement of the action a bond in such an amount as the justice or judge approving the same should direct, in any case not less than $250, conditioned for the payment of the costs of the action. If there is more than one plaintiff this bond must be executed by at least two of them, each of whom must justify in the sum of $5,000. If the plaintiffs are unable to justify in the sum of $5,000, then the bond must be executed in addition by at least two sureties who shall justify in that sum. In case there is but one plaintiff, the statute is silent as to the sum in which he shall justify, and in such case no additional sureties are necessary, unless the judge approving the bond shall so require. (*Potsdam E. L. Co.* v. *Village of Potsdam,* 49 Misc. 18; affd., on opinion of the court below, 113 App. Div. 894.) In addition, if an injunction *pendente lite* is granted in the action this same bond may also provide for the payment of the damages arising therefrom to the party entitled to the money, the auditing, allowing or paying of which was enjoined, if the court shall finally determine that the plaintiff is not entitled to such injunction, thus obviating the giving of separate security upon the injunction as provided by section 893 of the Civil Practice Act, which applies only " where special provision is not made by law for the security to be given upon an injunction order."

In the Burns case, in which there is a single plaintiff, there was given a bond in the sum of $500 executed by the plaintiff and two sureties, conditioned that the plaintiff shall pay all costs which may be awarded the defendants if the court shall finally determine the same in favor of the defendants, and also shall pay all damages arising therefrom to any party entitled to the money, the auditing, allowing or paying of which was enjoined, if the court shall finally determine that the plaintiff is not entitled to the injunction, not exceeding the sum of $500. The plaintiff did not justify upon this bond in any sum, and the sureties each justified in the sum of $500. Presumably the amount of this bond was fixed by the judge who approved the same, the county judge of Jefferson county, and that he required two sureties in addition to the plaintiff, although no order to that effect appears in the record, the approval being merely " approved as to form and sufficiency this 12th day of June, 1925."

Under the authority of the *Potsdam Case* (*supra*) I must hold this bond to be sufficient, both for the maintenance of the action, and the issuance of the injunction, subject to the power of the court

to require a new undertaking upon the injunction, pursuant to the Civil Practice Act (§ 900).

In the Shaughnessy case there is more than one plaintiff. The security given is in two instruments, one to pay the costs of the action, and one to pay the damages sustained by the injunction. The first instrument recites that it is given to meet the requirements of section 51 of the General Municipal Law, that a bond be given to the defendants for their protection. It is in form an undertaking and not a bond. This is not a fatal objection, as section 14 of the General Construction Law provides: "A provision of law authorizing or requiring a bond to be given shall be deemed to have been complied with by the execution of an undertaking to the same effect." Being in the form of an undertaking there is no penalty fixed therein, neither is there any limit in amount to the liability under the undertaking, which is to the effect that the plaintiffs " will pay all costs that may be awarded to the defendants in the above entitled action if the court shall finally determine the same in favor of the defendants." This is not a fatal objection. " The omission of a penalty in the bond does not affect its validity. The only effect is to make the liability commensurate with the condition." (*Dodge* v. *St. John,* 96 N. Y. 260.) Hence, the liability of the sureties is the full amount of costs which may be awarded, irrespective of amount. The serious objection to this undertaking is that it is not executed by two of the plaintiffs. But one of the plaintiffs has executed the undertaking and he has justified in the sum of $5,000. In addition, it is executed by but one other surety, who also justifies in the sum of $5,000. This is not a compliance with section 51 of the General Municipal Law.

It does not necessarily follow that this action cannot be maintained because of the defect in this bond. I am of the opinion that the court has power and upon a proper showing should permit this irregularity or defect to be corrected or supplied by the execution and filing *nunc pro tunc* of a bond complying in all respects with section 51 of the General Municipal Law.

It is the theory of the Civil Practice Act that all controversies between parties be heard and determined upon the merits, and that all technicalities be brushed aside in order to reach the merits. To that end section 105 provides: "At any stage of any action, special proceeding or appeal, a mistake, omission, irregularity or defect may be corrected or supplied, as the case may be, in the discretion of the court, with or without terms, or, if a substantial right of any party shall not be thereby prejudiced, such mistake, omission, irregularity or defect must be disregarded." This is an entirely new provision of the law, and has been interpreted to require the court to

permit the filing of a bond as security for costs which is a condition precedent to the maintenance of an action, after the time in which so to do has expired, as it affects no substantial right of the litigants. (*Allen* v. *Fink*, 211 App. Div. 411.)   The only substantial right secured to defendants by the portion of section 51 of the General Municipal Law in question is to be secured in the payment of the costs of the action if plaintiff is unsuccessful.   The precise time when that security shall be furnished is not of the essence of the right.

In addition section 150 of the Civil Practice Act provides: "A bond or undertaking in an action or special proceeding is sufficient if it conforms substantially to the form therefor prescribed by the statute or rule and does not vary therefrom to the prejudice of the rights of the party to whom or for whose benefit it is given.   Where such a bond or undertaking is defective, the court, officer or body that would be authorized to receive it, *or to entertain a proceeding in consequence thereof*, if it was perfect, may amend it accordingly, on the application of the persons who executed it; and it shall thereupon be valid from the time of its execution."   (Italics mine.) The latter part of this section was rewritten from section 730 of the Code of Civil Procedure without change of substance.   It has been held that the power to permit an amendment to a bond or undertaking conferred by section 730 of the Code of Civil Procedure includes the power to amend the bond for costs in a taxpayer's action provided for by section 51 of the General Municipal Law or the prior statutes to the same effect which have been revised into it.   (*O'Connor* v. *Walsh*, 83 App. Div. 179; *Bachia* v. *Rogers*, 174 id. 878, 879; 172 id. 963, 964.)

The case of *Guenther* v. *Patch* (155 App. Div. 27) is not an authority to the contrary.   The question of the power of the court was not discussed.   It was assumed, but the court held that under the peculiar circumstances of that case and the subsequent act of the Legislature, the granting of the amendment to the complaint which converted the action from one by interested property holders into a taxpayer's action, and the giving of the bond necessary in such an action *nunc pro tunc*, was an abuse of judicial discretion requiring reversal.

There is some language in the opinion in the Special Term decision in *Wadsworth* v. *Erwin* (124 Misc. 893) to the effect that the giving of the bond was a condition precedent to the maintenance of the action and that it could not be supplied *nunc pro tunc*.   It does not appear that any application was made to file such bond *nunc pro tunc* or that the attention of the court was directed to the

remedial provisions of the Civil Practice Act above quoted. The decision of the case was based upon the failure of the complaint to state a cause of action upon the merits, and the reference to this question was but incidental. For these reasons, this court does not regard it as a controlling authority as opposed to the Appellate Division decisions to the contrary above cited. The separate undertaking to pay the damages sustained by the injunction in case plaintiffs are successful complies in all respects with section 893 of the Civil Practice Act, and is sufficient. It is not necessary that the bond for costs should also secure damages under the injunction. That is permissive merely. If plaintiff avails himself of the permission, then no other bond under section 893 is required. If he does not, then section 893 applies and the bond required must be given. That is what plaintiffs did in this case.

The plaintiffs in the Shaughnessy case having applied to the court upon the argument for leave to file a new bond for costs complying in all particulars with section 51 of the General Municipal Law, an order may be entered permitting the filing and service of the same within ten days from the entry of such order. In the event of the failure so to do within such time, the injunction in such case must be vacated.

As the judgments in these actions will affect the validity of a contract made by the city of Watertown with the Donovan Construction Company, and the injunctions in question restrain the payment of moneys on that contract it is evident that these motions ought not to be decided without the presence of that company before the court as a party to the actions, and an opportunity given it to defend its contract. (*Jensen* v. *Board of Contract & Supply of Schenectady*, 74 Misc. 641.) In the Burns case this company was not a party. In the Shaughnessy case an attempt was made to include it as a defendant but by reason of an error in fact certain individuals alleged to be copartners doing business under the firm name of " Donovan Construction Company " were made defendants, with an allegation in the complaint that they were the contractors with the city. From the opposing affidavits it appears that the Donovan Construction Company is a corporation and that the contract under attack here was made with that corporation. In order to save time and to facilitate the decision of the cases upon the merits, upon the argument the Donovan Construction Company appeared in court by attorney and consented that it be made a party defendant in each action and that the complaints be amended by the insertion of the appropriate allegations connecting it with the causes of action, and also that these motions be heard and decided with the same force and

effect as if made after such corporation had been made a party, and upon such amended complaints. Orders may be entered carrying out the terms of this stipulation.

The object of this action is to restrain the performance by the defendants who are the municipal authorities of the city of Watertown, of an alleged illegal act, to wit, the installation of a municipal street lighting system pursuant to a contract made between the city and the Donovan Construction Company, dated June 5, 1925, and from raising money on the credit of the city either by temporary loans or by bond issue for the payment in whole or in part of the proposed lighting system.

The grounds of the alleged illegality are as follows: *First,* that the proposal to embark the city into the business of municipal lighting and the expenditure of the money therefor, and the raising thereof by the issuance of bonds or obligations of the city has not been submitted to and approved by the qualified voters of the city, as required by law; *second,* that the contract with the Donovan Construction Company in question has not been authorized in the manner required by law and is consequently void, and *third,* that the erection of the plant pursuant to the contract would be a waste of public funds in that it would mean a duplication of the lighting plant, because it does not contemplate using any of the existing plant of the Northern Utilities Company which the city is under contract to purchase.

Previous to the adoption of the Optional City Government Law (Laws of 1914, chap. 444) the city of Watertown was governed by a special charter (Laws of 1897, chap. 760). After the passage of that act, by proceedings regularly taken, the city adopted plan C as contained in that act, and since that time its affairs have been regulated by the special charter and by the provisions of the Optional City Government Law applicable to plan C. (*Cleveland v. City of Watertown,* 222 N. Y. 159.) In 1923 an act was passed by the Legislature, entitled "An act to revise the charter of the city of Watertown, New York" (Laws of 1923, chap. 660), by which the charter was entirely rewritten and the old charter repealed. Many of the provisions of the old charter were carried forward into the new without change, many were changed and a large number of new provisions were added. The new charter (§ 5) refers to the adoption of plan C of the Optional City Government Law and contains a provision that " nothing in this act contained shall be construed to alter, abridge, enlarge, restrict or in any wise affect the application of said act or any of the provisions thereof to said city."

The city of Watertown is the owner of a power site on the Black

river in or near the city, and has been engaged for some time in developing this water power and has been using the power produced for the purpose of pumping the water used in the city water supply. The municipal lighting has been supplied for a number of years by the Northern Utilities Company under contracts, the last of which has expired as to time, but the light is still being supplied by that company to the city. Those contracts contain provisions by virtue of which it is the claim of the company that if the city enters the field of furnishing its own light, it must purchase from the company the equipment used by the company to furnish the light at a price to be fixed by arbitration.

On May 18, 1925, the council of the city, which is its governing board, by resolution determined that power should be generated at the municipal power plant; that so much as should be necessary be used to do the municipal lighting, and for that purpose it should erect poles and lines therefor. Previous to that time it had caused to be prepared plans and specifications for a complete municipal lighting plant to be operated in connection with the city's power plant, which did not contemplate the use of any of the equipment of the Utilities Company now in use for city lighting. Bids had been asked for the construction of a plant according to such plans and specifications, and a number of bids had been received, among them being one from the Donovan Construction Company. On the same day the council awarded the contract for the construction of the plant to the Donovan Construction Company at its bid amounting to about $245,000, and the contract was entered into on June 5, 1925. The Donovan Company has entered upon the performance of the work and was so engaged until stopped by the injunction herein.

It is proposed to finance this new undertaking by temporary loans or city acceptances while the work is in progress, and when it is completed and the cost determined, bonds of the city will be issued to retire the temporary loans. No provision for the payment of any part of this work has been made in the city budget, upon which is based the tax levy for the current year. All these acts have been committed by the council upon its own responsibility, and no proposal authorizing any of them has been submitted to the taxpayers of the city nor been consented to or authorized by them.

The important question to be determined in this action is the broad one whether the power of the council in the administration of the affairs of the city is unlimited, whether it can embark upon any scheme which it may conceive is for the benefit of the city, expend any sum of money which it pleases for its accomplish-

ment, and pledge the credit of the city for the payment of such expenditures, as claimed by the defendants here; or whether the power conferred by the charter upon the council is limited to the conduct of the ordinary affairs of the city's government, and that when any extraordinary expenditure is contemplated, the question must be submitted to the taxpayers of the city for their determination, as claimed by the plaintiffs.

The determination of that question requires an examination of the laws governing the administration of the affairs of the city as a whole as well as the whole trend of modern legislation affecting the government of cities generally, in order that the intent of the Legislature may be arrived at. There has been a great movement of late years towards bringing the administration of local governmental affairs back into the hands of the people whose interests are vitally affected and whose money is taken to pay the expense of government; and to restrict the powers of those who have been put into official position. Evidences of this are seen in this State by the Home Rule Amendment to the Constitution (State Const. art. 12, § 3), the City Home Rule Law (Laws of 1924, chap. 363, as amd. by Laws of 1925, chap. 397) passed by the Legislature to carry said amendment into effect, the Optional City Government Law (Laws of 1914, chap. 444), the General Municipal Law, the General City Law, and other statutes having reference to particular municipalities. The particular statutes relating to the government of the city of Watertown must be read in the light of the legislative policy which is evidenced by all this legislation, and they should be given such an interpretation as will be in harmony therewith, if it can be done without doing violence to the plain meaning of the language used and other settled canons of construction.

Section 246 of the charter of 1923 (Laws of 1923, chap. 660) provides: " The council excepting as herein otherwise expressly provided, shall not create any pecuniary obligation whatever on the part of the city which shall not be payable in the fiscal year and which cannot be discharged from the income of the same year," with some immaterial exceptions. Section 244 provides: " Except as may be herein otherwise provided the council shall not have power to borrow, and it is hereby expressly prohibited from borrowing, any money on account of the city," except temporary loans in anticipation of the collection of taxes. By section 245 express power is given to borrow sufficient funds in 1924 to carry along the schools until taxes are collected in that year, a situation caused by the change made in the fiscal year.

The general provisions relating to the borrowing of money contained in the charter are contained in title 14, although there are

certain special provisions which will be considered later. Section 152 of that title reads as follows: " The council may direct the issuance of bonds of the city, or city warrants, or city acceptances from time to time, to defray the cost in whole or in part of, or to reimburse the treasury of the city for any of the following improvements, purposes or objects  *  *  *." Then follow eight subdivisions: No. 1 relates to paving; No. 2, to sewers; No. 3, to sidewalks; No. 4, to subways, bridges, public buildings, opening streets and the extension of the water service. This section also contains an omnibus provision to which reference will be made hereafter. No. 5 relates to temporary bonds in anticipation of tax collections; No. 6, temporary bonds to finance improvements in course of construction; No. 7, to meeting deficiencies in estimated revenues. No. 8 reads as follows: " Extraordinary expenditures in any branch or department of the city as in the next section provided." The next section is section 153 and reads as follows: " The council may resolve by an affirmative vote of four-fifths of its members that an extraordinary expenditure ought, for the benefit of the city, to be made for any specific purpose set forth in the resolution. It shall thereupon make or cause to be made, an estimate of the sum necessary therefor, and for all such purposes if there be more than one, and shall publish such resolution and estimate together with a notice that at the time and place therein specified, a special election of the taxpayers of the city will be held to decide whether the amount of such expenditures shall be raised by the issuance of bonds of the city, in the official newspaper of the city two times in each week during the two weeks next preceding the date fixed for such special election. The council shall by ordinance or resolution arrange and provide for all details necessary for such submission and election, including the manner of voting.  *  *  * Every taxpayer, male, female or corporation authorized by corporate resolution, whose name shall appear upon the last assessment-roll of the city, before such election and no other person or corporation, shall be entitled to vote at such election. The city clerk shall certify to the council at its next meeting, the result of such election and if the vote upon the same shall have been in the affirmative, the council shall direct the issuance of bonds in the amount of said estimates and the execution thereof by the mayor and city clerk." Section 156 empowers the council to make temporary loans in anticipation of the sale of bonds.

This provision for the submission to the taxpayers of the city of projects for extraordinary expenditure is not a new one in the government of the city of Watertown. All of the provisions of title 14 of the 1923 charter, except section 152, were substantially

contained in the charter of 1897 (Laws of 1897, chap. 760, § 205), and have been continued in the present charter with only such changes in language as are made necessary by the change in the form of government. The Optional City Government Law (Laws of 1914, chap. 444, § 10) provides: " Nothing in this act shall be construed as superseding or repealing any provision of law requiring any matter to be submitted to the vote of the electors or taxpayers, or permitting the city council to so submit any matter or question." After the city came under this law, when the question of the development of its water power plant was under consideration, the council twice caused the matter to be submitted to the taxpayers and did not proceed until their affirmative consent had been received, thus affording a practical construction by the city authorities to the effect that the meaning of the term " extraordinary expenditures " in that act is such expenditures as cannot be paid for by the proceeds of the tax levy for the year they are made, but must be financed by bonds.

If the expenditure for the installation of the municipal lighting plant comes within the meaning of the term " extraordinary expenditures," as contained in sections 152 and 153 of the charter, it is clear that the council had no right to make them until authorized to do so by the vote of the taxpayers. " Extraordinary " has been defined to mean, " Beyond or out of the common order or rule; not usual, regular, or of a customary kind; not ordinary; remarkable; uncommon; rare." (*Ten Eyck* v. *Rector, etc.*, 65 Hun, 194; affd., 141 N. Y. 588.) In *City of Geneva* v. *Fenwick* (159 App. Div. 621), in construing a statute which is almost identical with the one before us, the court held that the construction of a filtration plant in the existing water system was an extraordinary expenditure within the contemplation of the act, and in *People ex rel. U. S. V. M. Co.* v. *City of Geneva* (45 Misc. 237), where the same statute was in question, an expenditure for voting machines was held to be an extraordinary one. In *Mander* v. *Coleman* (109 App. Div. 454) the court, upon consideration of all the provisions of the charter of Elmira, which is very similar to that of Watertown, reached the conclusion that it was the legislative intent that all ordinary expenditures of the city should be paid from the tax levy of each year, and that it was not within the power of the council to make extraordinary expenditures which could not be so paid, without authorization by the vote of the people; and that the construction of a garbage crematory, the cost of which had not been provided for in the current tax budget, was an " extraordinary expenditure " within the meaning of that term in the charter providing for the submission to the people. The case of *Lyon* v. *City of Binghamton* (160 App.

# 152 BURNS v. CITY OF WATERTOWN.

Div. 222) involved the construction of a municipal lighting plant. Section 406 of the charter of the city of Binghamton (Laws of 1907, chap. 751, as amd. by Laws of 1911, chap. 337) contained a provision for the submission of extraordinary expenditures to the vote of the taxpayers, which was practically the same as that in the present Watertown act. The city authorities submitted the question to a vote, and the injunction restraining the issuance of the bonds and the execution of the contract was sustained on account of the failure to comply in all particulars with the law governing such submission. My attention has not been called to any authorities giving any different interpretation. I have no hesitation in reaching the conclusion that the construction of a municipal lighting plant the cost of which cannot be defrayed by an appropriation therefor in one year's tax budget, is an extraordinary expenditure within the meaning of those words as used in sections 152 and 153 of the charter of the city of Watertown.

Defendants seek to justify their action by calling attention to subdivision 4 of section 152 of the charter, before referred to, which is one of the eight enumerated purposes for which the council is empowered to issue bonds. This subdivision in its entirety reads as follows: " Building, rebuilding, altering or extending subways, bridges, or public buildings; opening, extending or widening streets; extension, repair or alteration of the water system or service, or of any part thereof; *or for any other purpose authorized in this act, or by any provision of law.*" (Italics mine.)

They further call attention to the fact that by section 57 of the charter, the council is expressly empowered to engage in municipal lighting, and as that is *another purpose authorized by the act,* they argue that bonds for the construction of the plant may be issued. Section 57 reads: " The council shall have power by resolution adopted by a four-fifths vote to cause power to be generated: (a) to light the streets, public square and places and public parks of the city and the public buildings of the city and county; (b) to sell and dispose of the same for industrial purposes; (c) to erect poles and lines and to excavate for and lay conduits within the city therefor and to maintain the same."

If that interpretation of the meaning of the section is the correct one, the legislative intent would have been fully met had the section read: " The council may direct the issuance of bonds of the city, or city warrants, or city acceptances from time to time, to defray the cost in whole or in part of, or to reimburse the treasury of the city, for any purpose authorized in this act or by any provision of law." It would render unnecessary the long enumeration of purposes for which bonds might be issued contained in section 152,

as well as those contained in sections 244 and 245 already mentioned, and in section 86, where power is given to borrow funds made necessary by a prevalent pestilence; in section 89, to borrow for a deficiency in the funds raised for the relief of the poor, and in sections 98 and 99, to borrow to carry on works of local improvement under construction. It would also render meaningless and superfluous section 153, requiring the submission of all propositions for extraordinary expenditures to a vote of the taxpayers.

To give to these words in the section the interpretation asked for by defendants would violate two very familiar rules of statutory construction: *First,* where a statute enumerates several classes of things, and immediately following and classed with such enumeration the clause embraces " other " things, the word " other " will generally be read as others of the class enumerated, and not to include things differing materially from those enumerated; and *second,* that all parts of an act are to be construed together and harmonized, if possible, and to that end the statute should be so interpreted as to give effect to every part thereof; any construction which deprives any part of it of effect and meaning is to be avoided.

The rule of interpretation to be applied here cannot be better stated than by quoting the language of ANDREWS, J., in *People ex rel. Mason* v. *McClave* (99 N. Y. 83, 89) as follows: " In determining the question now before us, the court is to be guided by the established rules of interpretation of written instruments. It is not compelled — indeed, it is not permitted, to give absolute and unqualified effect to a single section or clause of a statute, however direct, plain and unambiguous, considered by itself alone, the language may be, if there are other provisions inconsistent with a literal and unrestricted interpretation of such clause or section, unless the repugnancy is irreconcilable, in which case it is the duty of the court to preserve the paramount intention, so far as it is consistent with the rules of law, although this may lead to the rejection of some subordinate and secondary provision. (*Taggart* v. *Murray,* 53 N. Y. 233.) But fortunately it does not very frequently happen that a statute is incapable of a construction which will give some effect to all its parts. The primary purpose of interpretation is to ascertain the intent of the law-makers, and in statutes as other instruments, clauses, in themselves absolute and unqualified, may be limited by other clauses and provisions. The whole context of a statute may be examined to ascertain the meaning of a particular clause, and this becomes necessary where the meaning is doubtful, or where by giving a particular clause full effect it would come in conflict with other clauses. A statute, like a will or contract, is to be construed as a whole, and in applying this

principle of construction, it is not material in what order provisions, which at first blush seem contradictory, are placed. The meaning is to be collected *ex antecedentibus et consequentibus*, and a later provision may be qualified by a prior one, or the contrary. When the effort at a reconciling construction fails, and the repugnancy of different parts is absolutely irreconcilable, courts sometimes solve the difficulty by applying the somewhat arbitrary rule that the last expression of the law-maker in the act embodies the final intent, and on this ground give it effect rejecting the prior inconsistent provision. But this is a rule to be resorted to only *in extremis.*"

Construing this statute in its entirety in the light of the foregoing rules, it is evident that the absolute power conferred upon the council to enter the field of municipal lighting is limited to the case where previous provision for defraying the cost thereof has been made in the annual city budget and tax levy. If the expense connected with such a project is so great, when consideration is had of the other constitutional and statutory limitations upon the amount which can be raised by taxation in one year, that its payment must necessarily be spread over a number of years, and bonds or other form of city indebtedness issued to raise the necessary funds, then it is an " extraordinary expenditure; " and in that case the proposal must be submitted to and approved by the taxpayers before it can be entered into.

Stress is made upon the use of the word " may " in the first sentence of section 153, and the argument is made that the use of this permissive word vests in the council the power to determine whether or not an expenditure is extraordinary. I do not so read it. The discretion vested in the council is to determine in the first instance, not what is or is not an extraordinary expenditure, but whether or not such extraordinary expenditure ought to be made. When that decision is made by the council, its discretion in the matter ceases; and in prescribing what shall then be done, the mandatory word " shall " is repeatedly used in the remainder of the section. Cases are not infrequent where the word " may " in statutes relating to the interests of the public has been construed to mean " shall," and to impose a positive duty (*People ex rel. Otsego County Bank* v. *Supervisors of Otsego County,* 51 N. Y. 401; *People ex rel. Dinsmore* v. *Gilroy,* 82 Hun, 500), but I know of no case where under similar circumstances " shall " has been construed to mean " may."

No question is made in the papers before me of the existence of the following facts: No provision has been made in the annual city budget and tax levy for the payment of the cost of the con-

struction of the municipal lighting plant under the contract with the Donovan Construction Company; it is proposed to finance this work by temporary loans or city acceptances during the progress of the work, and the issuance of $100,000 of these evidences of city indebtedness has already been authorized by the council, and in the end to issue permanent city bonds to retire the temporary securities; that the proposal to make this extraordinary expenditure has not been submitted to nor approved by the taxpayers; that a contract for the construction of the plant has actually been let, and work upon the same had been begun when the temporary injunction herein was issued.

If I am correct in my views of the law above expressed it is clear that the execution of the contract and the expenditure therein contemplated are illegal acts on the part of the defendants, which constitute a waste of the public funds, and their commission during the pendency of this action should be restrained.

It is unnecessary to decide the other claims of illegality made, as for the most part they depend upon disputed questions of fact, which should be determined after a full trial.

As the continuance of this injunction will tie up a large public work and may result in large damages, it is probable that the undertakings given to secure the defendants for those damages in case the plaintiffs are not successful upon the trial, are not sufficient and should be increased. I will hear counsel upon that question upon the settlement of the order.

Orders may be prepared continuing the injunctions until the hearing and determination of the actions. If not agreed on, they may be settled before me on one day's notice.