In the Matter of the Estate of FRANCESCA FERRARA, Deceased.

Surrogate's Court, New York County, May 9, 1932.

*Forstenzer & Dolcemascolo*, for the objector Joseph Ferrara.

*Crescenzo Caggiano*, for the administrator.

*Matthew P. Doyle*, special guardian for Alfred Ferrara, infant.

*Frederick W. McGowan*, for the National Surety Company.

FOLEY, S. The administrator will be surcharged with the intestate shares due Joseph and Alfred Ferrara, the children of the decedent. The assets of the estate consisted mainly of cash in the sum of $10,500. The administrator, Frank Ferrara, the husband of the decedent and the father of the distributees, unlawfully invested these estate funds in the purchase of certain real estate. In this transaction the administrator mingled the estate funds with his own private moneys. Title to the property was taken in his individual name. The decree granting him letters of administration was made July 29, 1926. The conveyance to him of the real estate was dated June 9, 1927. At that time the two sons, Joseph and Alfred, were minors. A few days after the conveyance a trust agreement was made by the administrator appointing himself and his son John as trustees. That agreement pretended to recognize certain rights of the children as beneficiaries of the trust. The rents were to be collected by the trustees and the income paid out in certain fractional shares. But even as between the minors and the father, these fractional shares were not proportionate to the intestate shares of the children. It is significant also that no distribution of income to the beneficiaries was ever made under the terms of the agreement. The rentals appear to have been paid over to the father for his personal use. His subsequent acts show a continuing scheme on his part to deprive his children of their pecuniary interest in the estate. A quitclaim deed and an agreement were executed on February 29, 1928, in which the sons conveyed the property to their father and released and discharged him and his cotrustee, John Ferrara, from any obligation under the trust agreement of 1927. At the time of the execution of this quitclaim deed, both Joseph Ferrara and Alfred Ferrara, who had signed it, were infants. A second quitclaim deed to the father was executed by the sons on February 11, 1930. At that time Joseph was twenty-two years of age and Alfred was still an infant. It further appears from the evidence that the mortgage on the property was subsequently acquired by the father and transferred by him to his second wife. He likewise conveyed to her title to the property.

As against the son Alfred, who is still an infant, the various deeds are futile to prevent a surcharge and a present direction to pay his share of the estate. As against the son Joseph I likewise hold he is entitled to payment of his distributive share. The evidence does not establish any acquiescence in or ratification by Joseph of his father's conduct after he became of age. Nor does it indicate any relinquishment of his rights in the estate. The circumstances surrounding the execution of the quitclaim deed of 1930 by him after attaining his majority cannot be deemed to be a release of his

rights against his father as administrator. At that time Joseph had no interest in the property. The deed conveyed nothing. He was not fully informed of his legal rights. The rule of scrutiny of transactions between trustee and beneficiary has been stated as follows: " the *cestui que trust* must have full knowledge of all the facts and circumstances of the case. The *cestui que trust* must also know the law, and what his rights are, and how they would be dealt with by the court. He must not execute the release, or do the acts relied on as a waiver, confirmation, or acquiescence, under undue influence or fear of the trustee. The *cestui que trust* must be *sui juris*, as an infant cannot be bound by a release or other act; and if the *cestui que trust* has just come of age he ought to have proper legal advice." (2 Perry Trusts & Trustees [7th ed.], § 851.) The evidence here discloses that the deed was signed at the command of the father and under the threat of disinheritance of the son. The transaction was neither fair, open nor voluntary. (*Matter of MacNeil*, 165 App. Div. 842, 844; *Adair* v. *Brimmer*, 74 N. Y. 539.)

As an indication of the fraud which was practiced from the very beginning of this estate, it is significant also that deliberate misrepresentation was used in the original petition for letters of administration. The father in that petition falsely stated that the son Joseph was an adult, although at the time he was an infant, nineteen years of age. Upon the entire record I find a willful breach of trust committed by the administrator, for which he should be held liable in this proceeding. (*Matter of Ungrich*, 115 Misc. 762; *Adair* v. *Brimmer*, 74 N. Y. 539; *Gould* v. *Gould*, 126 Misc. 154; *Matter of Wotton*, 59 App. Div. 584.) No credit will be allowed the administrator for the payments on account alleged to have been made to the son Joseph.

The funeral bill is allowed in the sum of $500. Commissions to the administrator are disallowed.

Submit decree on notice settling the account accordingly and directing payment of the appropriate intestate share to the son Joseph and to the general guardian, when appointed, of the son Alfred.